**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 20 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES E. DAVIS and VIRGINIA
CALAME,

     Plaintiffs - Appellees,

v.

MID-CENTURY INSURANCE
COMPANY and FARMERS GROUP,
INC.,

     Defendants - Appellants.

No. 00-6224

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-96-2070-T)**

---

Eric S. Eissenstat (Burck Bailey and Dino E. Viera with him on the briefs) of
Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Oklahoma, for
Defendants-Appellants.

John T. Edwards and Shannon L. Edwards of Monnet, Hayes, Bullis, Thompson &
Edwards, Oklahoma City, Oklahoma, for Plaintiffs-Appellees.

---

Before **EBEL**, **McKAY**, and **CUDAHY**,[*] Circuit Judges.

---

[*]Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court
of Appeals for the Seventh Circuit, sitting by designation.

**McKAY**, Circuit Judge.

_____

Appellees Mr. Davis and Ms. Calame jointly owned real estate damaged by a hail storm. In its March 26, 1998 Order, the district court for the Western District of Oklahoma granted summary judgment to Appellees holding that the cost to remove damaged shingles and the labor cost involved in installing new shingles were not subject to depreciation under the actual cash value provision of Appellees' dwelling policy.

Prior to submitting Appellees' bad faith insurance claim to a jury, the parties stipulated Appellees' damages to be $439.50. Aplt. App. at 1215. Appellants, however, retained the right to challenge the district court's holdings that the cost to remove damaged shingles and the labor cost involved in installing new shingles were not subject to depreciation. At trial, the jury awarded Appellees $40,000 in damages on Appellees' bad faith claim and awarded Appellees $17,000,000 in punitive damages.

On appeal, Appellants contest the district court's holdings that the cost of removing damaged shingles and the labor cost involved in installing new shingles cannot be depreciated. Other issues on appeal include whether the district court erred in failing to grant Appellants' Judgment as a Matter of Law on Appellees' bad faith claim, whether the district court erred in allowing the issue of punitive

damages to reach the jury, and whether the district court erred in allowing Appellees to pierce the corporate veil making Appellant Farmers Group, Inc., liable for the punitive damages assessed against Appellant Mid-Century Insurance.

On appeal, we companioned this case with Branch v. Farmers Insurance Co. (Appeal No. 00-6385). We then abated both cases pending a response from the Oklahoma Supreme Court to three certified questions. The Oklahoma Supreme Court's response is attached to our decision in Branch and by reference is made a part of this opinion. We issue this opinion simultaneously with the Branch decision and in accordance with the Oklahoma Supreme Court's holdings.

The Oklahoma Supreme Court's answers to our certified questions resolve the underlying issues for us. The cost of removing damaged shingles is not subject to depreciation. However, the labor cost of installing new shingles is subject to depreciation. The Oklahoma Supreme Court's answers indirectly resolve the bad faith and punitive damages issues as well.

"[A]n insurer has an implied duty to deal fairly and act in good faith with its insured[,] and . . . the violation of this duty gives rise to an action in tort . . . ." Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). However, "the tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute." Skinner

v. John Deere Ins. Co., 998 P.2d 1219, 1223 (Okla. 2000). For bad faith liability to attach, the law at the time of the alleged bad faith must be settled. See id. at 1224.

The law was not settled at the time of Mid-Century's actions. "There was no conclusive precedential legal authority on the issue" of whether the costs associated with the removal of damaged shingles or the labor costs incurred in installing new shingles were properly subject to depreciation under the actual cash value provision of a dwelling policy. See id. at 1223. Furthermore, the Oklahoma Supreme Court ultimately found Mid-Century's position regarding the issues to be partially correct. (Cost of labor to install new shingles is depreciable, cost to remove damaged shingles is not). As a matter of law, Appellants' litigation of this legitimate coverage dispute cannot constitute bad faith because Appellants' position in the litigation was reasonable. See Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989).

We affirm the district court's holding that the cost of removing damaged shingles is not subject to depreciation. We reverse the district court's holding that the labor cost incurred to install new shingles is not depreciable. Accordingly we direct the district court to amend the amount of damages awarded to Appellee from $439.50 to $165.00. Furthermore, we reverse the district court's denial of Mid-Century's Motion for Judgment as a Matter of Law on Appellees'

-4-

bad faith claim.  Because Mid-Century did not act in bad faith as a matter of law, we also reverse the jury's award of punitive damages against Mid-Century.  We need not consider the piercing of the corporate veil issue as our decision renders it moot.

**AFFIRMED in part**, **REVERSED in part**, and **REMANDED** to the district court for entry of judgment consistent with this opinion.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

55 P.3d 1023
2002 OK 16
**(Cite as: 55 P.3d 1023, 2002 WL 378169 (Okla.))**
<KeyCite History>

Supreme Court of Oklahoma.

Eldon Carl BRANCH, Plaintiff,
v.
FARMERS INSURANCE COMPANY, INC., and
Farmers Group, Inc., Defendants.

No. 96,790.

March 12, 2002.
Rehearing Denied Sept. 9, 2002.

Insureds brought federal court actions against property insurers to challenge depreciation of tear-off and labor costs in calculating payment for hail damage to roof. The United States District Court for the Western District of Oklahoma, Miles-LaGrange, J., 123 F.Supp.2d 590, and Ralph Thompson, J., permitted depreciation of labor costs in one case. Appeals were taken. The Court of Appeals, McKay, J., certified questions. The Supreme Court, Winchester, J., held that: (1) actual cash value (ACV) is not replacement cost less depreciation, but is determined by the broad evidence rule; (2) labor costs for a new roof were "replacement costs" and, therefore, could be depreciated when using the replacement costs less depreciation method of valuing a loss; (3) layer of roofing to be torn off was "debris" within the meaning of policy provision requiring the insurer to pay reasonable expenses to remove debris caused by a covered loss; and (4) the labor cost to tear off the shingles was not subject to depreciation.

Questions answered.

West Headnotes

[1] Insurance k2181
217k2181

[1] Insurance k2182
217k2182

"Actual cash value" (ACV) is not replacement cost less depreciation; rather, ACV is determined by the broad evidence rule requiring consideration of all relevant factors and circumstances existing at the time of loss, including purchase price, replacement cost, appreciation or depreciation, the age of the building, the condition in which it has been maintained, and market value.

[2] Insurance k2172
217k2172

[2] Insurance k2185
217k2185

"Replacement cost" is the sum of those costs an insured is reasonably likely to incur in replacing his covered loss.

[3] Insurance k2182
217k2182
         (Formerly 217k2181)

Labor costs for a new roof were "replacement costs" and, therefore, could be depreciated when using the replacement costs less depreciation method of valuing a loss covered by a homeowners' insurance policy.

[4] Insurance k2140
217k2140

[4] Insurance k2182
217k2182
         (Formerly 217k2181)

Layer of roofing to be torn off was "debris" within the meaning of homeowners' policy provision requiring the insurer to pay reasonable expenses to remove debris caused by a covered loss, and, thus, the labor cost to tear off the shingles was not subject to depreciation.

[5] Insurance k1713
217k1713

An insurance policy is a contract.

[6] Insurance k1806
217k1806

The same principles generally apply to the construction of a policy of insurance as apply to any adhesion contract.

Federal Certified Question.

¶ 0 The United States Court of Appeals for the Tenth Circuit has certified questions of law pursuant to the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601-1611. The plaintiff, Eldon Carl Branch, purchased a homeowner's policy from the defendant, Farmers Insurance Company, Inc., which provided for payment of replacement cost in the event of a covered loss. The plaintiff's roof was damaged during a storm. The Tenth Circuit certified the following questions: "(1) In determining actual cash value, using the replacement costs less depreciation method, may labor costs be depreciated? (2) In determining replacement cost less depreciation, are labor costs of removing a damaged roof necessarily included or may roof tear-off be separately covered as 'debris removal?' (3) If tear-off costs are properly included as necessary replacement costs and labor costs are depreciable generally, may the labor costs incurred during tear-off also be depreciated?"

CERTIFIED QUESTIONS ANSWERED

Gary B. Homsey, Kevin Hill, Homsey, Cooper, Hill & Associates; Shannon L. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, OK; for Plaintiff.

Burck Bailey, Eric S. Eissenstat, Dino E. Viera, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for Defendants.

Richard C. Ford, Rustin J. Strubhar, Crowe & Dunlevy, Attorneys for Amici Curiae State Farm Fire & Casualty Company, and State Farm General Insurance Company.

WINCHESTER, J.

**1** ¶ 1 The United States Court of Appeals for the Tenth Circuit has certified three questions of law pursuant to the Oklahoma Certification of Questions of Law Act, 20 O.S.1991, §§ 1601-1611. The court states that it has heard oral arguments in two substantially *1025 similar diversity cases appealed from the United States District Court for the Western District of Oklahoma, *Branch v. Farmers Ins. Co.,* 123 F.Supp.2d 590 (W.D.Okla.2000), and *Davis v. Mid-Century Ins. Co.,* CIV-96-2070-T (W.D.Okla. March 26, 1998) (Westlaw 1998 WL 1285714). The federal court informs us that it is aware of the case of *Redcorn v. State Farm Fire and Casualty Co.,* 55 P.3d 1017 (2002) where the United States District Court for the Western District of Oklahoma has certified a question substantially similar to the first question certified by the Tenth Circuit. The answer to the certified question in *Redcorn* is being handed down contemporaneously with the answers to those presently before us.

¶ 2 The facts reported by the Tenth Circuit are as follows. The plaintiffs in these cases purchased homeowner's policies from various insurance companies. Those policies provide for roof surface repair and replacement coverage and separate coverage for "debris removal" following a covered loss. Hail and wind damaged the plaintiffs' roofs causing a total loss. The insurers do not dispute coverage. The insurers determined replacement cost, including materials and labor, and reduced that amount by depreciating both those components of the total cost. The plaintiffs contend that neither the labor associated with installing a new roof, nor the labor incurred during tear-off of damaged roofs are depreciable. The Tenth Circuit has certified the following questions:

"(1) In determining actual cash value, using the replacement costs less depreciation method, may labor costs be depreciated?
"(2) In determining replacement cost less depreciation, are labor costs of removing a damaged roof necessarily included or may roof tear-off be separately covered as 'debris removal?'
"(3) If tear-off costs are properly included as necessary replacement costs and labor costs are depreciable generally, may the labor costs incurred during tear-off also be depreciated?"

¶ 3 In the *Davis* case, the insurer figured the cost to tear off and replace the old damaged roof. The insurer then reduced this total amount by fifty percent for depreciation based on the roof's age in ratio to its estimated life. The plaintiffs argued that neither the labor for the tear-off, nor the labor for replacement should be subject to depreciation. In construing the plaintiffs' policy, the federal district court in *Davis* found that both the plaintiffs and the insurers suggested reasonable interpretations of the provisions regarding depreciation of labor. As a result, the court determined that an ambiguity existed in the policy as to whether the cost of labor associated with replacement of the roof was subject to depreciation. In that regard, the court concluded

that the materials were properly subject to depreciation, but labor costs to replace the roof should not have been depreciated. Concerning the question of debris removal, representatives of the insurer testified that the damage caused to the plaintiffs' roof in this case resulted in the roof surfacing becoming debris. The court found that the plaintiffs' policy regarding debris removal was unambiguous, and that it was a separate item of coverage not subject to depreciation.

**\*\*2 ¶ 4** Like the *Davis* case, the insurer in *Branch* depreciated the tear-off cost and the labor cost for installing a new roof to replace one that had been destroyed by wind and hail. The insurer paid the balance to the plaintiff, who was the insured. He sued, alleging that the insurer breached the terms of the insurance policy by depreciating the labor for tear off and installation. The federal district court in *Branch* found that tear-off costs and installation costs were reasonably likely in replacing a roof and therefore were included within the meaning of "replacement cost." The court further found that the term "replacement cost" was unambiguous, and it was proper to depreciate the cost of labor.

## I. IN DETERMINING ACTUAL CASH VALUE, USING THE REPLACEMENT COSTS LESS DEPRECIATION METHOD, MAY LABOR COSTS BE DEPRECIATED?

[1] ¶ 5 The *Davis* case included an endorsement to the plaintiffs' policy that provided, "Loss to roof surfacing will be settled at Actual Cash Value." The *Branch* case **\*1026** provided, "[W]e will settle covered losses to the roof surfacing ... on a *replacement cost less depreciation basis.*" The *Davis* policy measures the loss at "actual cash value," and the *Branch* policy measures the loss at "replacement cost less depreciation." The question from the Tenth Circuit appears to make these terms equivalent, but they are not.

### A. ACTUAL CASH VALUE IN *DAVIS.*

¶ 6 Actual cash value in Oklahoma is determined by the "broad evidence rule" as described in *Rochester American Ins. Co. v. Short,* 1953 OK 4, 252 P.2d 490. The Court-approved Syllabus in *Rochester American Ins. Co.,* 1953 OK 4, ¶ 0, 252 P.2d at 490, explains the relation between actual cash value and the broad evidence rule. Syllabus 3 provides that actual cash value of a building totally destroyed by fire is a matter of fact to be determined by a consideration of all

relevant factors and circumstances existing at the time of loss. Some relevant factors listed in *Rochester* include purchase price, replacement cost, appreciation or depreciation, the age of the building, the condition in which it has been maintained and market value. *Rochester American Ins. Co.,* 1953 OK 4, ¶¶ 11-18, 252 P.2d at 493 494. While replacement cost and depreciation are considerations in determining actual cash value, the two terms of the *Davis* and *Branch* policies are not equivalent.

¶ 7 The plaintiff, in *Rochester American Ins. Co.,* argued that cost of reproduction was the exclusive measure of recovery. But the Court answered by quoting *McAnarney v. Newark Fire Ins. Co.,* 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149, that "Indemnity is the basis and foundation of insurance law." The goal of indemnity is to place the insured in as good a condition, so far as practicable as he would have been if no fire had occurred. *McAnarney* added that to effectuate complete indemnity, every fact and circumstance tending to aid in formation of a correct estimate of the loss should be considered by the trier of fact. *McAnarney,* 247 N.Y. at 184, 159 N.E. at 904-905.

**\*\*3 ¶ 8** Like this Court in *Rochester American Ins. Co.,* the Supreme Court of Indiana also quoted *McAnarney* in deciding *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349 (Ind.1982). That case cited four methods in determining actual cash value of losses, [FN1] but identified the fourth test, the broad evidence rule originating with *McAnarney,* as the majority rule. *Travelers Indemnity Co.,* 442 N.E.2d at 356. The Indiana court called the broad evidence rule a flexible rule that permitted an appraiser, court, or jury to consider any relevant factor in determining actual cash value of damaged property. *Travelers Indemnity Co.,* 442 N.E.2d at 356.

> FN1. The other methods cited as minority rules are (1) Replacement cost, without deduction for depreciation, (2) The market value test, and (3) The replacement cost with deduction for depreciation. *Travelers Indemnity Co.,* 442 N.E.2d at 355.

¶ 9 The *Davis* court found an ambiguity regarding whether the cost of labor associated with roof replacement may be depreciated in an actual-cash-value policy. This Court has

previously held that the interpretation of a contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly. *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, ¶ 12, 812 P.2d 372, 376. The term "actual cash value" is found in the standard fire insurance policy, 36 O.S.Supp.2000, § 4803 (G). [FN2] Subsection B of that statute provides that "no policy or contract of fire insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in the state, unless is shall conform as to all provisions, stipulations, agreements, and conditions, with such form of policy." Because the term "actual cash value" is a statutory term that has been construed by this Court in the *Rochester American Ins. Co.* case, it has a specific meaning that is not ambiguous.

> FN2. Section 4803 was last amended by 1993 Okla.Sess.Laws, ch. 222, § 1.

¶ 10 The *Rochester American Ins. Co.* case involved the destruction of a building, in contrast to the *Davis* case that involves the destruction of a roof. The issue is how the broad evidence rule applies to the destruction of a roof. The *Davis* court found that **\*1027** the roof had a fixed life expectancy of twenty years. It had been in place ten years. The court concluded that replacement cost less depreciation was the primary factor to be considered in applying the broad evidence rule. This determination is permissible under the broad evidence rule. The court correctly acknowledged that the presentation of a different factual scenario could mandate that other factors be given more weight, but observed such a scenario was not before the court.

## B. REPLACEMENT COST LESS DEPRECIATION IN *BRANCH.*

[2][3] ¶ 11 Replacement cost is correctly defined by the *Branch* court as "the sum of those costs an insured is reasonably likely to incur in replacing his covered loss." The court cited the holding in *Gilderman v. State Farm Ins. Co.,* 437 Pa.Super. 217, 226, 649 A.2d 941, 945 (1994). The *Branch* court then found that the term "replacement cost" was unambiguous and subject to only one reasonable interpretation. Therefore, since labor to install a new roof was a cost the insured was reasonably likely to incur in replacing his roof, the cost of labor was included within the meaning of "replacement cost." Because labor was included within that

definition, it was proper to depreciate both materials and labor when calculating the loss suffered by the insured. We agree with the conclusion of the *Branch* court.

**\*\*4** ¶ 12 A roof is the product of materials and labor, and the roof's age and condition are also relevant facts in setting the amount of a loss. Depreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss. *Travelers Indemnity Co.,* 442 N.E.2d at 353.

## C. SUMMARY AND ANSWER FOR CERTIFIED QUESTION NUMBER 1.

¶ 13 In summary, actual cash value is determined by the broad evidence rule. The *Davis* court determined that under the broad evidence rule, "replacement cost less depreciation" was the proper measure for the loss of the roof under the facts before that court. The *Branch* policy contained an endorsement providing for "replacement cost less depreciation" to settle covered losses to roof surfacing. Therefore, in both cases, the losses of the two roofs were measured in the same manner. A roof is the product of both materials and labor, just as a building in *Rochester American Ins. Co.* was the product of both materials and labor. Depreciation was one of the factors considered in determining the loss in the *Rochester* case. We answer the first question certified to us by the Tenth Circuit that labor costs may be depreciated when using the replacement costs less depreciation method.

## II. IN DETERMINING REPLACEMENT COST LESS DEPRECIATION, ARE LABOR COSTS OF REMOVING A DAMAGED ROOF NECESSARILY INCLUDED OR MAY ROOF TEAR-OFF BE SEPARATELY COVERED AS 'DEBRIS REMOVAL?'

[4] ¶ 14 Our answer to the first certified question was that replacement cost includes the labor involved in replacement, and therefore is subject to depreciation under a "replacement cost less depreciation" endorsement in the insurance policy. The second question asks whether, given the rule cited, debris removal must be included in "replacement cost less depreciation." The Tenth

Circuit observes that the insurance industry does not appear to have a uniform practice on whether labor costs incurred during tear-off are depreciable. Both the *Davis* and *Branch* policies contain identical endorsements regarding debris removal. They provide: "We will pay your reasonable expenses to remove debris caused by a covered loss to covered property under Section 1 [*Branch* reads 'SECTION I']--Property." In *Davis,* the insurance adjuster recommended tear off and removal of one layer of roofing, and included this labor in the total cost of replacement. This labor cost of tear off was reduced by fifty percent for depreciation based on the roof's age. In *Branch,* the insurance adjuster recommended tearing off **\*1028** two layers of old roof surfacing. A depreciation factor of thirty- five percent was applied, based on the adjuster's estimate of the age and condition of the old roof and the average life of a similar composition shingle roof. The plaintiffs in the two cases assert that the labor involved in tearing off the old roof surface should not have been depreciated.

**\*\*5** ¶ 15 The federal district courts in the two cases reach different conclusions. In *Davis,* the court listed as an undisputed fact that the roof surfacing had become debris. The court found that the parties' respective arguments regarding depreciation of expenses for debris removal presented a close question. The court observed that the policy appeared to set out debris removal as a separate item of coverage, not subject to depreciation, but also found merit in the insurer's explanation of its adjustment practices regarding including debris removal as one of the costs associated with replacement. The court concluded that the policy should be construed to give effect to the language of the endorsement providing coverage for debris removal without deduction for depreciation.

¶ 16 In *Branch,* the insurer asserted that the plaintiff's existing roof surfacing was not debris, and therefore the tear off was an integral part of the total replacement cost. The court defined "debris" as "Scattered remains: RUINS," and "Discarded waste." *Webster's II New Riverside University Dictionary* 351 (1984). The court found no evidence to indicate that the plaintiff's old roof surfacing constituted debris. The court observed that the undisputed facts showed that the plaintiff's roof remained useful and was repaired a full year after the storm that caused the damage. There was no evidence that he had to remove any scattered or fallen shingles after the storm. The court further stated as undisputed that tearing off the plaintiff's old roof surfacing was necessary to the proper installation of a new roof.

[5][6] ¶ 17 An insurance policy is a contract. The same principles generally apply to the construction of a policy of insurance as apply to any adhesion contract. *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, ¶ 10, 812 P.2d 372, 376. In *Johnny F. Smith Truck & Dragline Service v. United States,* 49 Fed.Cl. 443 (2001), the Court of Federal Claims resolved a contract dispute between the plaintiff and the United States regarding debris removal in a flood damaged area. The dispute involved the definition of "debris." That court used a similar definition as the *Branch* court: "1. a. The scattered remains of something broken or destroyed; rubble or wreckage. b. Carelessly discarded refuse; litter." *American Heritage Dictionary of the English Language* (4th ed.2000).

¶ 18 If a roof has been damaged by wind or hail to the degree that it must be replaced, then the damaged portion is rubble or wreckage. If the whole roof must then be torn off to repair or replace the damaged portion, then those materials also must be considered wreckage. *Farmers Union Mutual Ins. Co. v. Oakland,* 251 Mont. 352, 825 P.2d 554 (1992). *See also, Manduca Datsun, Inc. v. Universal Underwriters Ins. Co.,* 106 Idaho, 163, 168, 676 P.2d 1274, 1279 (Idaho Ct.App.1984). Replacement costs include the cost of the labor to install the new materials forming the new roof. Removing damaged materials, and materials that have to be removed as a result of storm damage to the roof in order to install the new roof, must all be treated as rubble, or in the contract language, debris. If the insurer intended to exclude debris removal of damaged roofing products, it could have done so. To answer the question of the 10th Circuit, labor costs to tear off an old roof are not included as a necessary part of the replacement costs of installing a new roof.

II. IF TEAR-OFF COSTS ARE PROPERLY INCLUDED AS NECESSARY REPLACEMENT COSTS AND
LABOR COSTS ARE DEPRECIABLE GENERALLY, MAY THE LABOR COSTS INCURRED DURING
TEAR-OFF ALSO BE DEPRECIATED?

**\*\*6** ¶ 19 We have answered that tear off of the old roof is not included as a necessary part of the replacement costs of installing a new roof. The debris removal clauses in the insurance policies before this Court are identical, and do not mention depreciation. Therefore, the labor costs in debris removal may not be depreciated.

**\*1029** ¶ 20 CERTIFIED QUESTIONS ANSWERED.

¶ 21 CONCUR: HARGRAVE, C.J.; HODGES, LAVENDER, OPALA, WINCHESTER, JJ.

¶ 22 CONCUR IN PART; DISSENT IN PART: WATT, V.C.J. (JOINS BOUDREAU, J.); SUMMERS (JOINS BOUDREAU, J.), BOUDREAU (BY SEPARATE WRITING), JJ.

¶ 23 RECUSED: KAUGER, J.

BOUDREAU, J., concurring in part and dissenting in part, WATT, V.C.J., and SUMMERS, J. joining.

¶ 1 I concur in part and dissent in part.

¶ 2 I concur in the majority's answers to the second and third certified questions.

¶ 3 I dissent from the majority's answer to the first certified question for the reasons stated in my dissent to *Redcorn v. State Farm Fire and Casualty Co.,* 2002 OK 15, 55 P.3d 1017 which is being handed down contemporaneously. I would hold that in determining actual cash value using the replacement costs less depreciation method, labor costs may not be depreciated.

55 P.3d 1023, 2002 WL 378169 (Okla.), 2002 OK 16

END OF DOCUMENT