**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DARRELL HATFIELD, an individual,

Plaintiff - Appellee/
Cross - Appellant,

v.

LIBERTY MUTUAL INSURANCE
CO., a foreign corporation,

Defendant - Appellant/
Cross - Appellee.

Nos. 03-6016 and 03-6033
(D.C. No. 99-CV-1369-F)
(W. D. Oklahoma)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **BALDOCK** , and **HARTZ** , Circuit Judges.

Darrell Hatfield claims that Liberty Mutual Fire Insurance Company owed

him $50,000 on an insurance policy. Liberty Mutual agreed that it owed Hatfield

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

$25,000 but initially refused to pay the $25,000 unless Hatfield released his claim to the additional $25,000. Hatfield sued for the entire $50,000 and for damages, both compensatory and punitive, for bad faith. Liberty Mutual promptly paid $25,000 and the court granted Liberty Mutual summary judgment with respect to the insurance claim for the additional $25,000. The bad-faith claims proceeded to trial, resulting in a jury verdict favorable to Hatfield. Both parties appeal. We affirm.

## I.    BACKGROUND

The dispute in this case arises out of provisions for uninsured/underinsured motorist coverage (UIM coverage) in an automobile insurance policy issued by Liberty Mutual to Hatfield on June 5, 1998, to cover his two automobiles. The purpose of UIM coverage is to insure against bodily injury caused by (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for all bodily injury damages suffered by the person with UIM coverage. See 36 Okla. Stat. §3636(H).

On August 25, 1998, Hatfield was involved in an automobile accident with an underinsured motorist insured by Commercial Union Insurance Company (Commercial Union). Hatfield, who was not at fault, incurred more than $90,000 in medical bills arising out of the accident. The other driver's liability coverage was limited to $25,000.

On April 1, 1999, Hatfield requested that Liberty Mutual pay $50,000 in UIM coverage, contending that he could "stack" the $25,000 in UIM coverage on each of the two cars for which he had paid UIM premiums. Although Liberty Mutual acknowledged that it offered policies with stacked coverage, it stated that when Hatfield purchased his policy, he explicitly rejected stacked coverage (for which he would have had to pay a higher premium). Liberty Mutual offered to pay him $25,000 in UIM coverage, but only if he signed an "Underinsured Release" waiving his claim to the disputed $25,000. Hatfield refused to sign the release.

About May 24, 1999, Commercial Union notified Hatfield that it would tender the limits of its insured's $25,000 policy. Hatfield notified Liberty Mutual of this offer. Under Oklahoma law Liberty Mutual then had 60 days to accept Commercial Union's offer by waiving subrogation (its right to sue Commercial Union's insured for excess damages), or itself pay Hatfield the $25,000 owed by Commercial Union and sue the tortfeasor directly. 36 Okla. Stat. § 3636(E)(2). At the end of 60 days, subrogation rights are deemed waived. Id. Nevertheless, Commercial Union requested that Liberty Mutual put in writing its waiver of subrogation. Despite several written requests from Hatfield and Commercial Union, Liberty Mutual did not submit a written waiver of subrogation until September 9, 1999. Commercial Union sent Hatfield a check soon thereafter.

On September 10, 1999, Hatfield brought this diversity action against Liberty Mutual in the United States District Court for the Western District of Oklahoma. Relevant to this appeal, he alleged that (1) he was entitled to stacked UIM coverage; (2) Liberty Mutual acted in bad faith by refusing to submit its waiver of subrogation rights, intending by this refusal to delay payment from Commercial Union to Hatfield, thereby pressuring him into signing the release; and (3) Liberty Mutual acted in bad faith by refusing to pay the undisputed $25,000 UIM payment unless Hatfield released his claim to the disputed $25,000. Shortly after Hatfield filed suit, Liberty Mutual sent him a check for the undisputed $25,000, although he had still not signed a release.

On March 11, 2002, the district court granted partial summary judgment for Liberty Mutual, holding (1) that Hatfield was not entitled to stacked UIM coverage and (2) that no bad-faith claim could be predicated on Liberty Mutual's alleged delay of waiver of subrogation, because subrogation was statutorily waived after 60 days, regardless of whether Liberty Mutual sent a letter to Commercial Union confirming its waiver. The court denied summary judgment on the claim that Liberty Mutual had acted in bad faith when it conditioned payment of the undisputed $25,000 on Hatfield's signing a release for the disputed amount. It stated that "this is not one of those eye-popping bad faith

cases that leaves the Court wondering how the insurance company could have been so wicked, but there are submissible claims here." App. 761.

The case proceeded to trial on the remaining bad-faith claim. Just before trial Liberty Mutual moved in limine to exclude evidence relating to subrogation. The court tentatively barred testimony on the matter, although such evidence was ultimately presented at trial. At the close of Hatfield's case and at the close of all evidence, Liberty Mutual moved for judgment as a matter of law on the bad-faith claim. The court denied both motions, and the jury awarded Hatfield $110,000 in actual damages and $45,000 in punitive damages.

Liberty Mutual appeals, contending that (1) the district court erred in allowing testimony regarding subrogation, (2) the district court erred in denying Liberty Mutual judgment as a matter of law because Hatfield failed to present sufficient evidence that Liberty Mutual's conduct was unreasonable, (3) there was insufficient evidence that Hatfield suffered damages as a result of the alleged bad faith, and (4) there was insufficient evidence to support the award of punitive damages. Hatfield cross-appeals, contending that (1) the district court erred when it ruled as a matter of law that he was not entitled to stacked coverage, and (2) the district court abused its discretion when it denied Hatfield's motion to certify a class. We have jurisdiction under 28 U.S.C. § 1291.

## II.   DISCUSSION

### A.   Subrogation Evidence

Liberty Mutual argues that the district court erred by allowing testimony regarding subrogation.  It contends that the admission of such evidence was contrary to the court's ruling on its motion in limine, that the evidence was irrelevant, and that the evidence was unfairly prejudicial, misleading, and confusing.  We reject the argument because Liberty Mutual failed to preserve at trial its objection to the admission of this evidence.

In ruling on Liberty Mutual's motion in limine, the district court stated:

> In my opinion, there are good relevance arguments probably both ways on this.  I think there's a good—at least a plausible argument from the plaintiff's perspective that this may have some minimal relevance, although I think the relevance is minimal.  I think the defendant has a plausible argument that the issue relating to the waiver of subrogation is not relevant.
>
> My determination at this time, is that in light of the minimal, at best, relevance of the delay in the waiver of the subrogation and in light of the Rule 403 considerations of prejudice, confusion, and waste of time, that the motion in limine is sustained as to references to the right of delay in waiver of the right of subrogation.  I recognize, and I hasten to add, that as this matter unfolds, should it unfold in such a way from plaintiff's perspective that plaintiff would submit that perhaps that matter should, in fairness, be revisited, I will be happy to hear counsel on that outside the hearing of the jury, and I certainly emphasize that latter point.  But for now, at least, my determination is that the relevance of the delay in waiver of subrogation is minimal, at best, and is substantially outweighed by considerations of prejudice, confusion, and waste of time.  For that reason, at this point, the motion in limine on that issue is sustained

and that will remain the ruling of the Court until such a time, if ever, as it is revisited outside the hearing of the jury.

App. 497-98. Clearly, the ruling was tentative.

At trial Hatfield's attorney approached the bench seeking permission to ask a witness questions relating to subrogation. The court denied permission. Hatfield's attorney subsequently asked the witness several questions that Liberty Mutual now argues related to subrogation. Liberty Mutual contends that it "twice objected to the line of questioning, and the district court twice overruled the objections without explanation." Aplt. Br. at 7.

The record reveals, however, that Liberty Mutual did not object to the questions on the ground that they related to subrogation and thus were excluded under the court's previous ruling. Rather, counsel objected that (1) a question mischaracterized an exhibit, and (2) opposing counsel should not be permitted to question a witness about the wording of an exhibit because "[t]he exhibit speaks for itself." App. 534. The court overruled both objections. Liberty Mutual's brief describes this exchange as if counsel objected on the ground that the question would elicit subrogation evidence. That was not the case.

Hatfield then testified that he had planned to buy some property with the insurance proceeds (apparently his medical bills were covered by his medical insurance) but was delayed in doing so because he received the payment later than expected. Liberty Mutual's brief states, "The implication of [Hatfield's]

testimony was that the money to purchase the land . . . was coming from [Liberty Mutual] . . . ." Aplt. Br. at 8. It argues that the court's overruling Liberty Mutual's prior objections (the objections on grounds other than subrogation) placed it "in a quandary"—either allow the inference to stand that Liberty Mutual's conduct caused Hatfield's delay in purchasing the land, or question him about subrogation to show that it was Commercial Union's conduct that caused the delay. Id. But instead of objecting to Hatfield's testimony, Liberty Mutual chose to cross-examine Hatfield about subrogation. Hatfield's attorney objected on the ground that the answer would be evidence regarding subrogation. Liberty Mutual's counsel then argued that the evidence should be allowed in, because the door had already been opened. The district court agreed and Liberty Mutual questioned Hatfield about subrogation.

Liberty Mutual now contends that it was error for the district court to allow this testimony. Yet Liberty Mutual never objected at trial to any testimony on the ground that it concerned subrogation. In fact, Liberty Mutual was the party who argued that such testimony should be allowed, saying that Hatfield had opened the door to such testimony. Therefore, Liberty Mutual's contention has been forfeited by failure to preserve it below. See Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1332 (10th Cir. 1996) (party ordinarily cannot complain on appeal of errors it induced or invited below).

**B.     Denial of Judgment As a Matter of Law**

Liberty Mutual argues that the district court erred in denying its motions for judgment as a matter of law on Hatfield's claim of bad faith.

> We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court.  Such a judgment is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.  We do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for [those] of the jury.  However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.  We must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party.

Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999) (internal quotation marks and citations omitted).  The controlling question when a defendant seeks judgment as a matter of law "is whether the plaintiff has arguably proven a legally sufficient claim."  Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1241 (10th Cir. 2001).

**1.     Bad Faith**

Under Oklahoma law an insurer has "'an implied duty to deal fairly and act in good faith with its insured.'"  See Conover v. Aetna US Health Care, Inc., 320 F.3d 1076, 1079 (10th Cir. 2003) (quoting Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977)).  This duty will create a claim against the insurer if "there is a clear showing that the insurer unreasonably, and in bad faith,

withholds payment of the claim of its insured." See VBF, Inc. v. Chubb Group of Ins. Cos., 263 F.3d 1226, 1234 (10th Cir. 2001) (internal quotation marks omitted). "'[T]he tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute.'" Davis v. Mid-Century Ins. Co., 311 F.3d 1250,1252 (10th Cir. 2002) (quoting Skinner v. John Deere Ins. Co., 998 P.2d 1219, 1223 (Okla. 2000).

When Liberty Mutual moved for judgment as a matter of law at the conclusion of all the evidence, the court denied the motion, stating:

> There is evidence in this case from which a jury could find that Liberty Mutual conditioned payment of an admittedly undisputed amount on execution of an unlimited release which would have extinguished Mr. Hatfield's contractual stacking claim. Where there is a legitimate dispute as to one component of a claim, a jury may reasonably conclude that it is not reasonable to hold payment of the undisputed amount hostage to relinquishment of a legitimately disputed component of the claim . . . .

App. 677.

We agree. Liberty Mutual has not disputed that Hatfield was entitled to $25,000 under his policy, yet it refused to pay him that amount unless he signed the release. A reasonable jury could decide that Liberty Mutual's withholding of payment was little more than an effort to take advantage of an insured in need of proceeds rightfully due him, and that there was no "legitimate dispute," Davis, 311 F.3d at 1252, to justify the failure to pay $25,000.

-10-

In its defense Liberty Mutual called an expert witness who testified that it was an accepted industry practice at the time in question to require releases before paying the insured, even if the amount was undisputed, and that the law did not clearly forbid the practice. The expert concluded that Liberty Mutual's practice of always requiring a release before payment was "incorrect" but not "unreasonable." App. 657. Such evidence, however, was not binding on the jury, which could draw the commonsense conclusion that failure to pay an undisputed debt when due is an act of bad faith.

Liberty Mutual makes much of our statement in a recent opinion that "[f]or bad faith liability to attach, the law at the time of the alleged bad faith must be settled." Davis, 311 F.3d at 1252. It argues, essentially, that because no court had ever explicitly held that an insurer could not condition payment of an undisputed amount on release of all disputed claims, it could not have been bad faith for Liberty Mutual to do so in this case. This argument misreads Davis. The point in Davis was that an insurer does not engage in bad faith when it raises an unresolved legal contention that a claim is not covered by the policy. The law that must be settled is the law governing the meaning and effect of the insurance contract. Once the coverage issue is settled, a refusal to pay may constitute bad faith. See Christian, 577 P.2d at 903 (the "statutory duty imposed upon insurance companies to pay claims immediately, recognizes that a substantial part of the

right purchased by an insured is the right to receive the policy benefits promptly"); Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) ("a claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient").

Accordingly, we reject Liberty Mutual's challenge to the jury finding of bad faith.

### 2.    Damages

Liberty Mutual also argues that the district court should have granted its motion for judgment as a matter of law on the bad-faith claim because Hatfield failed to prove any damages resulting from the alleged bad faith.  Were this question properly before us, we might agree with Liberty Mutual.  But because Liberty Mutual failed to preserve the argument at trial, we will not address it here.

Liberty Mutual moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) both at the end of Hatfield's case and after presentation of all the evidence.  Nowhere in either of its motions, however, did it argue that Hatfield had failed to prove damages.  Because Liberty Mutual did not challenge the sufficiency of the evidence of damages in its motions for judgment as a matter of law, it did not preserve the issue for appeal.  See, e.g, Davoll v. Webb, 194 F.3d 1116, 1136 (10th Cir. 1999) (when challenging on appeal the sufficiency of the

evidence on an issue, "failure to move for a directed verdict on [the] particular issue will bar appellate review of that issue").

## C.    Punitive Damages

Liberty Mutual argues that insufficient evidence existed to support an award of punitive damages, and asks this court to vacate the award. Although there is some doubt whether Liberty Mutual preserved the issue below, we need not address the question of preservation because we disagree with Liberty Mutual on the merits.

The district court's determination that there was sufficient evidence is a question of law we review de novo. Nieto v. Kapoor, 268 F.3d 1208, 1222 (10th Cir. 2001). Under Oklahoma law, punitive damages do not automatically follow from proof of bad faith. See McLaughlin v. Nat'l Benefit Life Ins. Co., 772 P.2d 383, 385 (Okla. 1988). Rather, punitive damages are available when an "insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured." 23 Okla. Stat. § 9.1(B)(2). Here, Liberty Mutual refused to pay the undisputed $25,000 unless Hatfield relinquished his claim for the disputed $25,000. A jury could properly view this refusal as a strong-arm tactic that was in blatant disregard of Liberty Mutual's duty to its insured. We affirm the award.

**D.    Stacked UIM Coverage**

In his cross-appeal Hatfield challenges the district court's ruling on summary judgment that he was not entitled to stacked coverage.

> We review the district court's grant of summary judgment de novo. . . . Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999) (further citations and internal quotation marks omitted).

Under Oklahoma law, "a clause limiting the liability of an insurer to single uninsured motorist coverage when multiple automobiles are insured would be void and unenforceable as against public policy if the contract did not clearly show that it was the *insured's intent* to agree to such a limitation." Scott v. Cimarron Insurance Co, Inc., 774 P.2d 456, 458 n.3 (Okla. 1989). When he purchased his insurance policy, Hatfield signed two forms relating to stacked coverage. The first form was entitled "Oklahoma Non-Stacked Uninsured Motorists Coverage Option Form." On the form he checked the box indicating that he wished to purchase UIM coverage in the same amount as his bodily-injury-

-14-

liability coverage. The second form was entitled "Oklahoma Stacked Uninsured Motorists Coverage Option Form." On that form he checked the box indicating that he did not wish to purchase UIM coverage. These two forms adopted the language in the model form found in 36 Okla. Stat. § 3636(H), which specifies the requirements for UIM coverage forms.

According to Liberty Mutual, each of these two forms also had a back side containing specific notices regarding whether UIM coverage could be stacked. When Hatfield's counsel requested copies of the original forms, Liberty Mutual informed him that it no longer had them. It said that it had implemented a system to scan documents into a computer file, rather than keep hard copies of the documents. Because back sides were standardized, Liberty Mutual did not scan them; thus, none could be produced. Hatfield contends that because Liberty Mutual cannot show that the forms Hatfield signed had back sides, it cannot prove that it was his intent to agree to purchase non-stacked coverage, as required under Oklahoma law. In response Liberty Mutual argues: (1) even without the back sides, the fronts of the forms were sufficient to show informed consent, and (2) there is no evidence in the record that the forms Hatfield signed did not have back sides.

We agree with the district court that whether the forms had back sides is immaterial. Regardless of whether the forms had back sides, the forms signed by

Hatfield comply with Oklahoma law by establishing Hatfield's clear intent to waive stacked coverage and instead purchase non-stacked coverage.

### E.    Class Certification

Finally, Hatfield asserts that the district court erred when it denied his motion to certify a class under Federal Rule of Civil Procedure 23. Hatfield's reply brief concedes, however, that "[t]here is no disputing that if indeed the District Court committed no error in ruling that the [UIM] policies should not have been stacked, it follows that there is no basis to certify a class action." Aplee. Reply Br. at 11. Because we have held that the district court did not err in denying stacked coverage, the class-certification issue is moot.

## III.    CONCLUSION

We AFFIRM the judgment below. We also deny Liberty Mutual's motion to dismiss the cross-appeal for lack of jurisdiction.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge