ROCHESTER AMERICAN INS. CO. v. SHORT.

No. 34894. Jan. 10, 1953.

*253 P. 2d 490.*

Rittenhouse, Hanson, Evans & Turner, Oklahoma City, for plaintiff in error.

Hope & Hope, Maysville, and David A. Kline and H. M. Redwine, Oklahoma City, for defendant in error.

PER CURIAM. The parties will be referred to herein as they appeared in the lower court. Plaintiff brought this action on a standard form insurance policy covering a dwelling in the city of Pauls Valley, alleging that on January 8, 1949, the property had been com-

pletely destroyed by fire, that proper notice had been given to the insurer which carried insurance in the total sum of $3,000. In addition to this insurance, additional insurance in the amount of $2,000 was carried with another company. Therefore, defendant's liability under the policy involved in this case was limited to 3/5 of the amount of the loss, not in excess of $3,000. The Home Owners Loan Corporation was, by amendment, made a party defendant, but it filed a disclaimer and thereafter Geraldine Stufflebaum intervened claiming to be the owner of a promissory note, secured by a mortgage on the property. In the final decree, her claim was given a first and prior lien on the recovery by plaintiff as against the defendant, Rochester American Insurance Company, for the total amount of her claim. Defendant admitted issuance of the policy and there was introduced evidence showing it had been notified of the loss although it had claimed the notice given was not in proper form.

The only contention of the defendant is that the verdict of the jury for the plaintiff in the amount of $3,000 is contrary to and in disregard of the trial court's instruction, is not supported by sufficient evidence, is contrary to law and erroneously excessive; and that the motion for a new trial should therefore have been granted. Defendant claims that the actual value of plaintiff's property at the time of the loss was less than $5,000, based on a formula it contends is exclusive for figuring such a loss. It does admit liability in an amount of $1,108.71 or $1,801.68.

If there was sufficient evidence before the jury to sustain its verdict, then this resolves all matters presented in this appeal and the judgment must be affirmed, Mid-Continent Pet. Corp. v. Fisher, 183 Okla. 638, 84 P. 2d 22. Defendant offered no evidence as to the value of the property, so we must look solely to the evidence presented by plaintiff and his witnesses.

Witness Donihoo testified that he had dealt in real estate in Pauls Valley since 1944 and was familiar with property values, and that it was his opinion the dwelling of plaintiff, exclusive of the lot, was worth $5,250 at the time of its destruction; that the rates of depreciation insisted upon by the defendant were only one factor used in arriving at the value of the property and that the condition of the house and the neighborhood in which it was located were other factors considered.

Witness Moore, who had worked on the house, testified that the house was painted on the outside and that the inside was in "pretty nice shape."

Witness Ward, a carpenter for 40 years, testified that it would cost $9,239.37 to rebuild the house and a written estimate for materials and labor prepared by Hudson-Houston Lumber Company for witness Ward is in the total of $9,253.39. All evidence introduced showed that the property was worth in excess of the total amount of insurance carried.

Defendant's brief is all on the theory that the plaintiff is only entitled to recover the "actual cash value" of the destroyed premises and that the "actual cash value" can only be determined by taking the estimate of plaintiff's witness, Ward, and then applying a formula for figuring depreciation. It gives no consideration to the present day conditions where the dollar value of the property has been increased by the general depreciation of the value of such dollars and gives no consideration to testimony of the witnesses who apparently took these conditions into consideration.

Defendant insists instruction No. 5 of the court is correct, but complains that in spite of the admonitions of the court and its instruction, these were not sufficient to secure a verdict in conformity to the evidence and such instruction. Instruction No. 5 reads as follows:

"You are instructed that a policy of insurance is a contract of indemnity,

that is, that the insured is only entitled to recover the actual cash value of the property destroyed in the event of a total loss.

"The actual cash value of a building is the cost of replacing said building with material of like kind and quality less depreciation. In arriving at the amount of depreciation you shall consider the age of the building, the condition in which it was maintained, any changes in the neighborhood which might affect the value of the building and any other facts and circumstances in evidence which affect the value of the property.

"You are further instructed, for your information and guidance, that the total insurance claimed by the plaintiff to be in full force and effect upon the property at the time of the fire was the sum of $5,000.00 of which $3,000.00 is involved in the instant suit. The plaintiff's recovery in this case can only be three-fifths (3/5ths) of the actual cash value as determined by you, under the instructions heretofore given.

"You are instructed that the terms and provisions of the policy in suit are fixed by law in this State and no other form of policy may be written.

"And, in this connection, you are instructed that your verdict must be for the plaintiff against the defendant in such an amount as you think will fairly compensate him for the loss sustained by him, after taking the above and foregoing facts into consideration, but in no event shall your verdict be in the excess of $3,000.00."

It will be noted in this instruction that the court stated the "actual cash value" of a building is the cost of replacing said building with material of like kind and quality *less depreciation* and that the *amount of depreciation was to be determined* by taking into consideration the age of the building, the condition in which it had been maintained, changes in the neighborhood and any other facts and circumstances in evidence which affect the value of the property. Some of the other matters to be considered must have been the knowledge gained by the jurors when they viewed the premises on the request of plaintiff. In sending the jury to view the premises, the court gave the following instruction:

"And gentlemen, there has been some evidence here that has been produced from this witness stand relative to the character of the neighborhood in which this residence was situated. You are requested by the Court to take that into consideration. View the entire neighborhood, view the situation as you see it, as a reasonable man so that you may be more able to render a more just and equitable verdict."

Title 36 O. S. 1941 §241, effective January 1, 1946, provides in part that:

" * * * If buildings insured against loss by fire, and situated within this state, are totally destroyed by fire, the company shall not be liable beyond the actual value of the insured property at the time of the loss or damage. * * *"

Title 36, O.S.A. §244.1, provides that the company insures the property, "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * *". Neither section mentions either depreciation or appreciation bearing upon such value applicable at the time this insurance policy was issued and when the loss occurred. It is true that the standard policy in use prior to January 1, 1946, did contain a provision to the effect that the damage should be ascertained according to actual cash value "with proper deduction for depreciation and appreciation." We must assume that the wording of our present law implies consideration will be given to the appreciation and depreciation of the property insured and that these will work no hardship on the insurer or the insured since insurer has written a policy which contemplates protecting the insured against all damages up to the total amount of its policy if the damages are a result of the risks assumed under such policy.

In McAnarney v. Newark Fire Ins. Co., 247 N. Y. 176, 159 N. E. 902, 56 A.L.R. 1149, the plaintiff insisted that the cost of reproduction was the exclusive measure of recovery, but the court said:

"Indemnity is the basis and foundation of all insurance law. * * * 'The contract of the insurer is not that, if the property is burned, he will pay its market value, but that he will indemnify the assured, that is, save him harmless or put him in as good a condition, so far as practicable as he would have been in if no fire had occurred.' * * * The insurer in our case, in its contract with the plaintiff stipulated that it 'does insure' the plaintiff 'to the extent of the actual cash value.' Under our interpretation of the phrase, the insurer 'does insure' to the limit of actual value. To insure is 'to guarantee or secure indemnity for future loss or damage.' Where insured buildings have beeen destroyed, the trier of facts may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstances which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction. * * * as well as any other fact reasonably tending to throw light upon the subject."

To the same effect is Lee v. Providence Washington Ins. Co., 82 Mont. 264, 266 P. 640.

Replacement cost is one factor in determining "actual cash value" but it is not exclusive. "Actual cash value" in a particular case depends upon the nature of the property insured, its condition and other circumstances existing at the time of loss. 29 Am. Jur., Section 118, p. 890.

In the case of Butler v. Aetna Ins. Co. of Hartford, Conn., 64 N. D. 764, 256 N. W. 214, the first syllabus of the court reads:

"While the question of value in estimating the loss under a fire insurance policy is more or less a matter for expert opinion, and testimony in that behalf may not be arbitrarily rejected or disregarded, but is to be considered in the same manner as other evidence, nevertheless the question is one of fact, and, in determining it, the jury may give such testimony weight according as it appeals to their intelligent and impartial minds, in view of all the facts and circumstances developed upon the trial and the common knowledge and experience of mankind."

and the fourth syllabus is:

"A contract of fire insurance is one of indemnity whereby the insurer undertakes to make the insured whole as against such loss of the insured property as he may suffer on account of fire in an amount not exceeding that stipulated in the policy."

and at page 216 it is stated:

"The question of value is always more or less a matter for expert opinion. In such cases the jury are not confined in their consideration of the question to testimony respecting values given by witnesses. They may take into consideration the character, age, condition of the property, its location, and the use to which it is put and the demand for such use, the profit likely to accrue therefrom, the property's salability, and all the one hundred and one other things that go to fix the value of any property. * * * The jury are presumed to have been men and women of reasonable intelligence and business experience. They have the right to consider, together with the plaintiff's testimony, all of the other facts and circumstances as the same appeared to them * * *".

The case of Stenzel v. Pennsylvania Fire Ins. Co., 110 La. 1019, 35 So. 271, cited by defendant, involves the loss of a property covered by an insurance policy in excess of the amount at which the property had failed to sell at an auction. The second syllabus of this case reads:

"In determining the value of the insured property, in adjusting the loss under a fire insurance policy, market value is not necessarily to govern, but the aim must be to arrive as near as possible at the value of the insured property as it stood on the day of the fire, taking into consideration what would be the cost of rebuilding, and allowing for difference in value between

the buildings new and in the condition in which they were when destroyed."

Then the court quotes from 13 Am. & Eng. Enc. of L., p. 367, as follows:

"Except as otherwise provided by valued policy laws, the measure of the insurer's liability in case of destruction of the building is the fair value of the property destroyed, or, as it has been put, the intrinsic value of the building, not the cost of rebuilding, nor the difference in the value of the ground with and without the building. And it is the real value of the building as such, not its relative value to the insured."

In Appleman's treatise on Insurance Law and Practice, vol. 6, §3823, pages 171-172, appears the following:

"It has been stated that in determining the actual cash value of the property, any relevant fact including the purchase price and the opinion of the experts on value could be considered."

The case of Firemen's Fund Ins. Co. v. Box, 123 Okla. 113, 252 P. 433, does not define "actual cash value" but if effect is given to the entire instruction in that case with respect to which the court's syllabus quoted by defendant was written, it is apparent that many factors were to be considered and no formula of depreciation was stated.

The item of labor in the estimate of witness Ward is in excess of the amount for which the insurer claims it should be held liable. Certainly it could not contend that this would be indemnity to the insured to put him in as good condition as he would have been had no fire occurred. The mathematical formula insisted upon by defendant is not a part of the policy, it is not included in the law of our state and cannot be imposed upon the jury as the only factor in fixing the amount of damage suffered by the plaintiff.

In this case, no testimony was offered showing that the property was at the time of destruction worth less than $5,000, the total amount of insurance carried by plaintiff. On the contrary, an estimate of a carpenter of more than 40 years' experience showed it would cost in excess of $9,200 to rebuild and another witness who dealt in real estate in the city said it was worth, exclusive of the lot, $5,250. In addition, the jury actually viewed the premises and the jurors had been instructed to consider the age of the building, the condition in which it was maintained, the neighborhood and any other facts and circumstances in evidence which affect the value of the property. We think the record amply sustains the verdict of the jury and the case is affirmed.

This court acknowledges the services of Attorneys Jewell Russell Mann, Charles P. Gotwals, Jr., and Robert J. Stanton, who, as Special Masters, aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.