2002 OK 15

**Charles REDCORN, Plaintiff,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, and State Farm General Insurance Company, Defendants.**

No. 96,562.

Supreme Court of Oklahoma.

March 12, 2002.

Rehearing Denied Sept. 10, 2002.

Michael W. Hinkle, Oklahoma City, OK; Reggie N. Whitten, Jason E. Roselius, Whitten, Nelson, McGuire, Wood, Terry Roselius & Detrich, Oklahoma City, OK; Jack Mattingly, Sr., Jack Mattingly, Jr., Mattingly, Snow & Mattingly, Seminole, OK; Attorneys for Plaintiffs.

Richard C. Ford, Rustin J. Strubhar, Crowe & Dunlevy, Attorneys for State Farm Fire & Casualty Company, Defendant.

Burck Bailey, Eric S. Eissenstat, Dino E. Viera, Fellers, Snider, Blankenship, Bailey & Tippens, Attorneys for Amici Curiae Farmers Insurance Company, Inc. and Mid–Century Insurance Company.

John T. Edwards, Shannon L. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Attorneys for Amici Curiae James E. Davis, Virginia Calame and Elden Branch.

WINCHESTER, J.

¶1 The United States District Court for the Western District of the State of Oklahoma has certified the following question: "In determining actual cash value, using the replacement costs less depreciation method, may labor costs be depreciated?" We answer that a roof is a single product consisting of both materials and labor, and that pursuant to the "broad evidence rule," which allows a fact-finder to consider the age and condition of the roof, depreciation of the whole product is appropriate. Because labor is a part of the whole product, it is included in the depreciation of the roof.

¶2 The federal district court has provided a joint statement of agreed facts by the parties. The plaintiff, Charles Redcorn, purchased a homeowner's policy from State Farm Fire and Casualty Company, one of the defendants. Redcorn's policy provided for roof surface repair and replacement cov-

erage on an actual cash value basis. His policy includes an endorsement entitled "ROOF SURFACE LOSSES—ACTUAL CASH VALUE ENDORSEMENT":

> "Roof Surfaces: We will pay the actual cash value at the time of loss for loss or damage to roof surfaces. We will not pay an amount exceeding that which you actually and necessarily spend to repair or replace the damaged roof."

Redcorn's policy does not define "actual cash value" nor does it prescribe means for determining actual cash value.

¶3 On November 9, 1998, Redcorn's roof was damaged by either a windstorm or hail. On February 11, 1999, State Farm issued a payment for the actual cash value of the damage to the roof. The payment was calculated by determining the replacement cost, including materials and labor, and depreciating it. Redcorn contends that Oklahoma law permits actual cash value to be measured by replacement cost less depreciation, but he advocates separating the cost of the roof replacement into components of materials and labor, and depreciating only the materials. The federal district court cited two federal district court cases that are now on appeal which address the same issue, *Davis v. Mid Century Ins. Co.*, CIV–96–2070–T (W.D.Okla. March 26, 1998) (Westlaw 1998 WL 1285714), and *Branch v. Farmers Ins. Co.*, 123 F.Supp.2d 590 (W.D.Okla.2000). The district court additionally observes that there have been numerous other lawsuits raising the same issue. The United States Court of Appeals for the Tenth Circuit has certified similar questions to this Court in case number 96,790, 55 P.3d 1023. The answers to these questions are handed down contemporaneously with the answer to the federal district court question in this case.

¶4 To answer the question submitted by the federal court, we must construe the term "actual cash value." An insurance policy is a contract. The same principles generally apply to the construction of a policy of insurance as apply to any adhesion contract. *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶10, 812 P.2d 372, 376. *Wiley v. Travelers Ins. Co.*, 1974 OK 147, ¶16, 534 P.2d 1293, 1295, reviews certain established rules for construing terms in insurance policies. Parties to a contract for insurance are free to choose the risks to be covered by the policy. Once agreed upon, the parties are bound by the terms of the contract; and courts will not rewrite those terms. The construction of a policy should be natural and reasonable, viewed in the light of common sense. The result should not be absurd. The interpretation of an insurance contract and whether it is ambiguous is a matter of law that will be resolved by the court. *Dodson*, 1991 OK 24, ¶12, 812 P.2d at 376.

¶5 Subsection B of 36 O.S.Supp.2000, § 4803,[1] provides that "no policy or contract of fire insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in the state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy." The standard fire insurance policy found in subsection G uses the term "actual cash value." That term has a specific meaning that has been construed by this Court, and is not ambiguous.

¶6 The fact that "actual cash value" is part of an endorsement in Redcorn's policy insuring roof surfaces for a hazard other than fire or lightening, does not affect the construction of the term. An endorsement that is not a part of the standard fire policy and which insures against other perils is permitted by 36 O.S.Supp.2000, § 4803 (C).[2]

---

1. Section 4803 was last amended by 1993 Okla. Sess.Laws, ch. 222, § 1.

2. Title 36 O.S.Supp.2000, § 4803 (C) provides: "Appropriate forms of additional contracts, riders or endorsements, insuring against indirect or consequential loss or damage or against any one or more perils other than those of fire and lightning, or providing coverage which the insurer issuing the policy is authorized by charter and by the laws of this state to assume or issue, may be issued in connection with the standard fire policy.

"Such other perils or coverages may include those excluded in the standard fire insurance policy, and may include any of the perils or coverages permitted to be insured against or issued by property and casualty insurers. Such forms of contracts, riders and endorsements may

Though the term "actual cash value" is used in a permitted endorsement, it may not be given a different meaning than that used in the standard fire policy. Any other rule would create confusion and unnecessary ambiguity.

■ ¶ 7 Actual cash value in Oklahoma is determined by the "broad evidence rule" as described in *Rochester American Ins. Co. v. Short*, 1953 OK 4, 252 P.2d 490. The Court-approved Syllabus in *Rochester American Ins. Co.*, 1953 OK 4, ¶ 0, 252 P.2d at 490, explains the relation between actual cash value and the broad evidence rule. Syllabus 3 provides that actual cash value of a building totally destroyed by fire is a matter of fact to be determined by a consideration of all relevant factors and circumstances existing at the time of loss. Some relevant factors listed in *Rochester* include purchase price, replacement cost, appreciation or depreciation, the age of the building, the condition in which it has been maintained and market value. *Rochester American Ins. Co., 1953 OK 4*, ¶¶ 11–18, *252 P.2d at 493*–494.

■ ¶ 8 In rejecting the plaintiff's argument that cost of reproduction was the exclusive measure of recovery, *Rochester American Ins. Co.* quoted *McAnarney v. Newark Fire Ins. Co.*, 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149, that "Indemnity is the basis and foundation of insurance law." The goal of indemnity is to place the insured in as good a condition, so far as practicable, as he would have been if no fire had occurred. *McAnarney* added that to effectuate complete indemnity, every fact and circumstance tending to aid in formation of a correct estimate of the loss should be considered by the trier of fact. *McAnarney*, 247 N.Y. at 184, 159 N.E. at 904–905.

¶ 9 Like this Court in *Rochester American Ins. Co.*, the Supreme Court of Indiana also quoted *McAnarney* in deciding *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982). That case cited four methods in

determining actual cash value of losses,[3] but identified the fourth test, the broad evidence rule originating with *McAnarney*, as the majority rule. *Travelers Indemnity Co.*, 442 N.E.2d at 356. The Indiana court called the broad evidence rule a flexible rule that permitted an appraiser, court, or jury to consider any relevant factor in determining actual cash value of damaged property. *Travelers Indemnity Co.*, 442 N.E.2d at 356.

¶ 10 Redcorn insists that depreciation of labor costs is inconsistent with the principle of indemnity. He argues that to be indemnified the materials for a roof may be depreciated, but not the labor to put the roof in place. If he were put in the same position as he was before his roof was destroyed, his replacement roof would have shingles the same age and in the same condition as before the damage. He theorizes that if it were possible to purchase depreciated shingles, the cost of the labor to install them would be the same as the cost of installing new shingles. He concludes that while the insurer is entitled to depreciate the cost of the materials for a roof, the cost of labor should be paid without any adjustment.

¶ 11 A roof does not have a separate market value from the building it covers. The relevant evidence for determining actual cash value for a roof would include cost of reproduction, the age of the roof, and the condition in which it has been maintained. A building is the product of both materials and labor. The age and condition of the building were considered relevant facts in the *Rochester American Ins. Co.* case. Likewise, a roof is the product of materials and labor, and its age and condition are also relevant facts in setting the amount of a loss.

¶ 12 Depreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss. *Travelers Indemnity*

contain provisions and stipulations inconsistent with such standard fire insurance policy, if said provisions and stipulations are applicable only to such additional coverage or to the additional peril or perils insured against."

**3.** The other methods cited as minority rules are (1) Replacement cost, without deduction for depreciation, (2) The market value test, and (3) The replacement cost with deduction for depreciation. *Travelers Indemnity Co.*, 442 N.E.2d at 355.

*Co.,* 442 N.E.2d at 353. For example, if a roof has an expected life-span of twenty years, and it is near the end of that time but could be expected to last five more years, given its condition, that is a fact to be considered in setting the amount of a loss. Likewise, if a roof is in worse condition than would be expected from its age, that is also a factor to be considered.

¶ 13 Despite the objections of Redcorn, indemnity is served by considering the age and condition of a roof, both materials and labor, in setting an amount of loss. To meet the goal of indemnity, Redcorn should be placed, as nearly as practicable, in the same condition as he was in just prior to the insured loss. Pursuant to the broad evidence rule, a fact-finder is entitled to consider what the life of the destroyed roof, both materials and labor, would have been, as well as any other relevant evidence presented. In *Rochester American Ins. Co.,* 1953 OK 4, ¶ 9, 252 P.2d at 492, the Court observed that the jury instruction stated that the actual cash value of a building is the cost of replacing the building with material of like kind and quality less depreciation, and that the amount of depreciation was to be determined by considering the age of the building, the condition in which it had been maintained, changes in the neighborhood and any other facts and circumstances in evidence that affected the value of the property, including the viewing of the premises by the jury. When the *Rochester* Court mentions replacing the building with material of like kind and quality, replacing necessarily includes labor.

¶ 14 Redcorn chose an "actual cash value" policy, and paid premiums based on his choice. He insured a roof surface, not two components, material and labor. He did not pay for a hybrid policy of actual cash value for roofing materials and replacement costs for labor. To construe the policy in such a manner would unjustly enrich the policy holder.

¶ 15 In summary, actual cash value is determined by the broad evidence rule. That rule requires that all relevant evidence be considered in determining a loss. A roof is the product of both materials and labor just as a building is the product of both materials and labor. Age and condition of a roof is relevant evidence in determining actual cash value.

### ¶ 16 CERTIFIED QUESTION ANSWERED.

¶ 17 CONCUR: HARGRAVE, C.J.; HODGES, LAVENDER, OPALA, WINCHESTER, JJ.

¶ 18 DISSENT: WATT, V.C.J. (JOINS BOUDREAU, J.); SUMMERS (BY SEPARATE WRITING AND JOINS BOUDREAU, J), BOUDREAU (BY SEPARATE WRITING), JJ.

¶ 19 RECUSED: KAUGER, J.

BOUDREAU, J., dissenting, WATT, V.C.J., and SUMMERS, J. joining.

¶ 1 I respectfully dissent.

¶ 2 The question certified to us is whether in Oklahoma an insurance company may depreciate the cost of labor to replace a residential roof when determining the actual cash value of the roof using the replacement cost less depreciation method. The parties advise us this is an issue of first impression not only for Oklahoma but for the entire country.[1]

1. Redcorn advises us that only California, through its Department of Insurance (not through its courts), has addressed the issue. He provided copies of excerpts from a report titled "The California Department of Insurance Market Conduct Examination Report of State Farm Fire and Casualty Company (NAIC # 25143) and State Farm General Insurance Company (NAIC # 25151) Bloomington, Illinois." The report appears to have been prepared in early 1998. The report contains the following with respect to depreciation of labor:

¶ 13. Depreciation of Labor Costs: While not cited as errors, the Companies depreciated labor costs when determining ACV settlements. *Labor costs should not be depreciated.* This matter is referred to CDI Legal Division for review and opinion. (emphasis added).

The report also contains the following with respect to depreciation of labor:

Depreciation of labor: Nowhere in the claim files is it explained how any depreciation amounts are calculated, nor do the files reflect that the basis of depreciation is ever explained to the insured. *Moreover, labor of subcontractors is depreciated; labor is not a depreciable item.* (emphasis added)

¶ 3 The material facts are not disputed and are found in the certification order. Charles Redcorn (Redcorn) purchased a homeowner's policy from State Farm Ins. Co. (State Farm). The policy provided for roof surface repair and replacement coverage on an actual cash value basis. The policy does not define actual cash value. A windstorm or hail damaged Redcorn's roof on November 9, 1998. State Farm concluded that the total amount of loss to the roof was $11,050. Because the roof was approximately sixteen years old, State Farm applied a depreciation factor of 80% (based on a twenty-year roof life). Subtracting 80% of the total amount of the loss, State Farm concluded the actual cash value of the roof was $2,210 ($11,050 less $8,840 equals $2,210). State Farm then reduced the actual cash value by the amount of Redcorn's deductible resulting in a payment to Redcorn of $1,960 ($2,210 less $250 equals $1,960). Redcorn sued State Farm. While he agrees State Farm properly depreciated the cost of shingles to be installed on his roof, he argues State Farm may not depreciate the cost of labor to install them.[2]

¶ 4 The majority holds that State Farm may depreciate the cost of labor. It reaches this result by defining Redcorn's roof as a "single product consisting of both materials and labor."

¶ 5 I would resolve the issue differently. Oklahoma adopted the broad evidence rule to calculate actual cash value in *Rochester American Ins. Co. v. Short*, 1953 OK 4, 252 P.2d 490.[3] The broad evidence rule permits the trier of fact to consider "any evidence *logically tending* to establish the correct estimate of the value of the property at the time of the loss." *Zochert v. National Farmers Union Property & Casualty Co.*, 576 N.W.2d 531, 534 n. 2 (S.D.1998) (emphasis added); *Giulietti v. Connecticut Ins. Placement Fa-*

*cility*, 205 Conn. 424, 534 A.2d 213, 216 (1987); *Brooks Realty, Inc. v. Aetna Ins. Co.*, 276 Minn. 245, 149 N.W.2d 494, 495 (1967); *see also* 12 Couch on Insurance §§ 175:33, 177:25 (3d ed.1998). Applying the rule to the issue presented in this case, we must determine whether depreciating the cost of labor to replace Redcorn's roof *logically tends* to establish the correct estimate of the actual cash value of the roof at the time of the loss.

¶ 6 In making this determination, I reject the majority's characterization of Redcorn's roof as a single product. A roof, unlike a preassembled consumer good, is not an integrated product. Redcorn cannot go the lumber yard or the retail store and buy a roof. A roof does not exist until the shingles are transported to the site and installed on top of the house. A roof is not a unified product but a combination of a product (shingles) and a service (labor to install the shingles).

¶ 7 The shingles are of course logically depreciable. As they age, they certainly lose value due to wear and tear. They typically have a useful life of twenty years. It makes sense, then, that sixteen-year-old shingles have lost sixteen/twentieths, or eighty percent, of their value over time.

¶ 8 Labor, on the other hand, is not logically depreciable. Does labor lose value due to wear and tear? Does labor lose value over time? What is the typical depreciable life of labor? Is there a statistical table that delineates how labor loses value over time? I think the logical answers are no, no, it is not depreciable, and no. The very idea of depreciating the value of labor is illogical. The image that comes to me is that of a very old roofer with debilitating arthritis who can barely climb a ladder or hammer a nail. The value of his labor, I suppose, has depreciated over time.[4]

---

2. For the sake of simplicity I will refer to the materials needed to replace a roof as shingles. Certainly nails and other materials are also needed.

3. New York was the first state to adopt the broad evidence rule to calculate actual cash value. *See McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902 (N.Y.1928). For a list of other jurisdictions that have adopted the broad evidence rule, *see* 12 Couch on Insurance § 175:33 at n. 24.

4. Among the materials provided by Redcorn are copies of excerpts from a State Farm training manual. In several different ways the training manual suggests that labor is not a depreciable item. For example, it defines depreciation as "decrease in the value of the property over a period of time due to wear, tear and obsolescence." This definition necessarily excludes depreciation of labor. It states that "[d]epreciation should be taken on a line-by-line basis from dollar one on items subject to weathering and/or

¶ 9 It is important to keep in mind that "[i]ndemnity is the basis and foundation of all insurance law." *Rochester American Ins. Co.*, 252 P.2d at 493. The objective of indemnity is to put the insured in as good a condition, as far as practicable, as he would have been in if the loss had not occurred, that is, to reimburse the insured for the loss sustained, no more, no less. *Id.* To properly indemnify Redcorn, State Farm should pay him the actual cash value of the shingles, depreciated for wear and tear, plus the cost of their installation. In my view, allowing State Farm to depreciate the cost of labor would leave Redcorn with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity.[5]

¶ 10 In sum, I would answer no to the certified question. I would hold that depreciating the cost of labor to install a roof does not logically tend to establish the correct estimate of the actual cash value of the roof at the time of the loss. I would respond to the certifying court that in determining actual cash value of a residential roof using the replacement cost less depreciation method, labor costs may not be depreciated.

SUMMERS, J.

¶ 1 I join in Justice Boudreau's dissenting opinion with this additional observation:

Before the damage the insured had on his house a roof with sixteen-year-old shingles. After the damage the insured is contractually entitled to have on his house sixteen-year-old shingles, or their value in money. He should not bear any of the cost of installing them, because that would deprive him of that for which he contracted-being made whole as if the damage had not occurred.

---

wear and tear." This statement, too, necessarily excludes depreciation of labor.

Even more interesting, the training manual shows that State Farm does not always depreciate labor. For example, the manual states that State Farm does not depreciate the additional cost of labor to install shingles on an especially steep roof ("steep charges"), does not depreciate the cost of labor to hand carry shingles to the second level of a two-story building ("two-story charges") and does not depreciate the cost of labor to tear off multiple layers of shingles when the top layer is destroyed ("tear off guidelines").

5. State Farm argues that Redcorn will realize a windfall if the cost of labor is not depreciated. According to State Farm, Redcorn will be able to postpone paying the cost of labor to replace his roof by an extra sixteen years. This argument is specious. In evaluating whether an adjusting practice accomplishes the aim of indemnity, the proper scope of inquiry focuses on a conceptual snapshot of the roof at the instant before the loss, and not on speculations about contingent betterment that may occur in the future.