

# SUPREME COURT OF ARKANSAS

No. CV-13-456

| | |
|---|---|
| MARK ADAMS AND KATHY ADAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>PETITIONERS<br><br>V.<br><br><br>CAMERON MUTUAL INSURANCE COMPANY<br><br>RESPONDENT | Opinion Delivered  November 21, 2013<br><br>CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS<br><br>HON. P.K. HOLMES, III, CHIEF JUDGE<br><br>CERTIFIED QUESTION<br>ANSWERED. |

**PAUL E. DANIELSON, Associate Justice**

This case involves a question of law certified to this court by the United States District Court for the Western District of Arkansas in accordance with Arkansas Supreme Court Rule 6-8 and accepted by this court on June 27, 2013. *See Adams v. Cameron Mut. Ins. Co.*, 2013 Ark. 292 (per curiam). The question certified is the following:

> Whether an insurer in determining the "actual cash value" of a covered loss under an indemnity insurance policy may depreciate the costs of labor when the term "actual cash value" is not defined in the policy.

We conclude that the answer to this question is no, it may not.

According to the district court's order, the petitioners, Mark Adams and Kathy Adams, individually and on behalf of all others similarly situated, brought a class action in the federal district court asserting a claim against the respondent, Cameron Mutual Insurance Company, for breach of contract. The claim involved the interpretation of a homeowners' insurance

SLIP OPINION

policy that covered the Adamses' dwelling in Mena, Arkansas, for the period June 1, 2008, to June 1, 2009, and specified a policy limit of $49,900. The policy provided that any covered loss would be paid based on actual cash value, rather than replacement value, stating as follows:

> 5. Loss Settlement. Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

The policy did not define the term "actual cash value."

On April 9, 2009, the Adamses' dwelling was damaged by a tornado, and they incurred a loss covered by the policy. Cameron's adjuster valued the Adamses' loss at $48,647.04 after inspecting the damage and calculating the repair costs and the depreciation of the items requiring repair, based on the age of the dwelling and the age of the items. Included within those items were certain labor-only services, such as the removal of roof decking, siding, and carpet and vinyl flooring. The depreciation of the materials and labor necessary to make the repairs was calculated as $8,364.66. The Adamses subsequently signed a Proof of Loss stating that the total amount claimed under the policy was $39,204.88, and Cameron issued a sight draft in that amount to the Adamses for their claim.[1]

In their class-action complaint before the district court, the Adamses asserted that Cameron's depreciation of labor-only costs resulted in the Adamses' receiving payment for their loss in an amount less than that to which they were entitled under their policy. They

---

[1]As noted by the district court, this amount represented the covered loss less depreciation and other applicable deductions.



alleged that Cameron breached the insurance policy, and those policies of the putative class members, when it improperly applied a depreciation factor to the labor portion of repairs required at their respective dwellings, and when the policies at issue did not allow for such depreciation. Upon the Adamses' motion, the district court issued a memorandum opinion and order in which it certified the instant question of law to this court.

In their brief before us, the Adamses contend that their policy's failure to address depreciation of labor renders the policy's term, "actual cash value," ambiguous, such that it must be construed in their favor. The Adamses acknowledge that materials can be depreciated; however, they claim, "[d]epreciation is limited to the effect of the passage of time in the decline in value of physical assets and is conceptually and practically inapplicable to labor." They maintain that, because depreciation applies to physical materials and not labor, it is unreasonable to assume that labor would be included in depreciation when calculating actual cash value. Had Cameron thought that labor should be depreciable under the policy, the Adamses claim, it was in the best position to clarify the ambiguity of the term "actual cash value" when it drafted the policy. In sum, they contend, if they are paid the depreciated value of materials, but not the full labor costs necessary to restore their home, they will not be fully indemnified or placed in the position that they would have been had the loss not occurred.

Cameron counters, asserting that the purchase of the actual–cash–value policy was the Adamses' choice. It contends that if it was required to pay the full labor costs associated with the Adamses' loss, the Adamses would be placed in a better position than that agreed to by



Cameron and than they had been in before the loss. It advises that, should this court adopt the Adamses' proposed materials-only depreciation rule, the costs of the insurance companies in Arkansas would rise and those costs would be passed on to Arkansas's insureds in the form of higher premiums. Cameron argues that the term "actual cash value" is not ambiguous and that the instant dispute is really one over the method of calculating actual cash value, rather than defining the term. Finally, it argues that the prevailing view is that an insurer properly reduces the replacement cost by an appropriate amount of depreciation, including depreciation for any and all parts of the replacement cost, in arriving at the actual cash value of damaged property.

In this matter, we are called upon to define the term "actual cash value." This court has observed that the language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *See ProAssurance Indem. Co. v. Matheny*, 2012 Ark. 461, ___S.W.3d ___. If the language is unambiguous, this court will give effect to the plain language of the policy without resorting to the rules of construction. *See id.* "In considering the phraseology of an insurance policy, the common usage of terms should prevail when interpretation is required." *Philadelphia Indem. Ins. Co. v. Austin*, 2011 Ark. 283, at 6–7, 383 S.W.3d 815, 820 (quoting *Cont'l Cas. Co. v. Davidson*, 250 Ark. 35, 42, 463 S.W.2d 652, 655 (1971)). On the other hand, if the language is ambiguous, this court will construe the policy liberally in favor of the insured and strictly against the insurer. *See id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *See id.*



The policy at issue fails to define the term "actual cash value;" however, both parties seem to agree that in determining "actual cash value," some form of depreciation is allowed. Indeed, Black's Law Dictionary defines "actual cash value" as "[r]eplacement cost minus normal depreciation." *Black's Law Dictionary* 1690 (9th ed. 2009). However, the Adamses contend that only materials can be depreciated, while Cameron argues that both materials and labor may be; both positions are tenable. Because the term "actual cash value" as used in the policy is fairly susceptible to more than one reasonable interpretation, we are of the opinion that the term is ambiguous.

We turn then to the question presented, which is, whether the costs of labor may be depreciated when determining the actual cash value under an indemnity insurance policy. At issue here is to what costs does depreciation apply. "Depreciation" plainly means "[a] decline in an asset's value because of use, wear, obsolescence, or age." *Black's Law Dictionary* 506 (9th ed. 2009). As already set forth, the Adamses contend that depreciation is conceptually inapplicable to labor; however, Cameron argues to the contrary, relying on a decision of the Supreme Court of Oklahoma.

In *Redcorn v. State Farm Fire & Casualty Co.*, 55 P.3d 1017 (Okla. 2002), the appellate court was presented with a similar question: "In determining actual cash value, using the replacement costs less depreciation method, may labor costs be depreciated?" 55 P.3d at 1018. The Oklahoma court answered in the affirmative, holding that because a roof was a "single product consisting of both materials and labor," depreciation of the whole product, including labor, was appropriate when determining actual cash value. We are not persuaded

SLIP OPINION

by the reasoning of the Oklahoma court's majority opinion.

Instead, we find the dissenters' opinion more convincing. The dissenting opinion rejected the characterization of a roof as a single product, observing instead that a roof is "not an integrated product . . . but a combination of a product (shingles) and a service (labor to install the shingles)." *Id.* at 1022 (Boudreau, J., dissenting). But even more sound was the dissenting opinion's discussion on the concept of depreciating labor:

> The shingles are of course logically depreciable. As they age, they certainly lose value due to wear and tear. . . . Labor, on the other hand, is not logically depreciable. Does labor lose value due to wear and tear? Does labor lose value over time? What is the typical depreciable life of labor? Is there a statistical table that delineates how labor loses value over time? I think the logical answers are no, no, it is not depreciable, and no. The very idea of depreciating the value of labor is illogical.
> . . .
> It is important to keep in mind that "[i]ndemnity is the basis and foundation of all insurance law." *Rochester American Ins. Co.* [*v. Short*, 252 P.2d 490,] 493. The objective of indemnity is to put the insured in as good a condition, as far as practicable, as he would have been if the loss had not occurred, that is to reimburse the insured for the loss sustained, no more, no less. *Id.* To properly indemnify Redcorn, State Farm should pay him the actual cash value of the shingles, depreciated for wear and tear, plus the cost of their installation. . . . *[A]llowing [the insurer] to depreciate the cost of labor would leave [the insured] with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity.*

*Id.* at 1022–23 (Boudreau, J., dissenting) (emphasis added).

We, like Justice Boudreau and his fellow dissenters, simply cannot say that labor falls within that which can be depreciable. *See also* Arkansas Insurance Department Bulletin 13A–2013 (stating that "[l]abor of any kind related to the repair, rebuild, or replacement of covered property cannot be depreciated"). Moreover, having found the term "actual cash value" ambiguous as used in the policy at issue, we must construe the policy liberally in favor of the Adamses and strictly against Cameron. *See Austin*, 2011 Ark. 283, 383 S.W.3d 815. In that

vein, we hold that the costs of labor may not be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term "actual cash value." Accordingly, we answer the certified question in the negative.

Certified question answered.

BAKER and HART, JJ., concur.

GOODSON, J., not participating.

**JOSEPHINE LINKER HART, Justice, concurring.** The federal court asked this court "[w]hether an insurer in determining the 'actual cash value' of a covered loss under an indemnity insurance policy may depreciate the costs of labor when the term 'actual cash value' is not defined in the policy." If the language in an insurance policy is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297, 57 S.W.3d 165, 169 (2001). Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.*, 57 S.W.3d at 169. Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Id.*, 57 S.W.3d at 169. We have expressly rejected the contention that when the terms of a written contract are ambiguous, its meaning is always a question of fact. *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 2012 Ark. 247, at 11, ___ S.W.3d ___, ___. Where parol evidence has been admitted to explain the meaning of the language, however, the determination becomes one of fact for a fact-finder to determine. *Id.* at 11, ___ S.W.3d at ___.

7

I agree with the majority that the term "actual cash value" is ambiguous. I further agree that if the term "actual cash value" is ambiguous, the policy is liberally construed in favor of the insured and strictly construed against the insurer. Also, the parties do not appear to have submitted parol evidence on the meaning of "actual cash value." Consequently, because the term is not defined in the policy and because extrinsic evidence was not submitted, the policy is liberally construed in favor of the insured and strictly construed against the insurer. Therefore, in this case, the insurer may not, in determining the "actual cash value" of a covered loss under an indemnity-insurance policy, depreciate the costs of labor.

Although I agree with the majority that the answer to the certified question is no, I do not join the majority's opinion because it goes further and defines the term "actual cash value." In doing so, the majority exceeds the scope of the certified question presented. Further, I decline to rely on a dissent from an Oklahoma court to determine Arkansas law. I am mindful, however, that the Arkansas Insurance Department has issued Bulletin 12A–2013 providing that "[l]abor of any kind related to the repair, rebuild, or replacement of covered property cannot be depreciated." While the bulletin is only persuasive authority, it clearly establishes the position of the Arkansas Insurance Department and supports the conclusion that the term is ambiguous.

Accordingly, I concur.

BAKER, J., joins in this concurrence.

*Taylor Law Partners*, by: *W.H. Taylor, Steven E. Vowell, William B. Putman*, and *Timothy J. Myers*; and *Wilson, Engstrom, Corum & Coulter*, by: *Stephen Engstrom*, for petitioners.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marshall S. Ney, Karen P. Freeman*, and *Angela C. Artherton*, for respondent.