Gregory WARE and Sharon
Ware, Plaintiffs,

v.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COM-
PANY, et al., Defendants.

CASE NO. 3:16–CV–617–CDL–SRW

United States District Court,
M.D. Alabama, Eastern Division.

Signed December 7, 2016

David Paul Martin, The Martin Law Group, LLC, Tuscaloosa, AL, Erik D. Peterson, Mendel Austin Mehr, Philip G. Fairbanks, Mehr Fairbanks & Peterson Trial Lawyers PLLC, Lexington, KY, for Plaintiffs.

Edward Morris Holt, Lee Edmundson Bains, Jr., Prim Formby Escalona, Thomas Julian Butler, Maynard Cooper & Gale, P.C., Birmingham, AL, for Defendants.

## ORDER

CLAY D. LAND, UNITED STATES DISTRICT COURT JUDGE

Plaintiffs Gregory and Sharon Ware purchased a homeowners insurance policy from Metropolitan Group Property and Casualty Insurance Company ("MetLife"). When a fire damaged their home, they made a claim under that policy for the damages. Under their policy, the Wares were entitled to an amount equal to the "actual cash value" of the cost to repair the fire damage. "Actual cash value" is defined in the policy as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." Compl. Ex. A, Homeowners Ins. Policy A–1, ECF No. 1–1 at 23. The Wares could receive a check for the "actual cash value" of their loss even if they did not make the repairs. If they chose to make the repairs, they had the right to file an additional claim for "the full cost of repair or replacement ... without deduction for depreciation." *Id.* at G–1, ECF No. 1–1 at 40.

The Wares only made an "actual cash value" claim. And they do not dispute that in calculating actual cash value, depreciation would be deducted from the cost of repairs. They maintain, however, that only the cost of the repair "materials" should be depreciated, and that no depreciation of the repair "labor cost" should be allowed. MetLife argues that it correctly deducted depreciation for the entire cost of repair, including materials and labor, and that it complied with the terms of the policy when it tendered a check to the Wares for the cost of repairs less depreciation of that repair cost. Accordingly, MetLife filed a motion to dismiss the Wares' Complaint.[1] Because the policy language unambiguously supports MetLife's payment of the Wares' claim, MetLife's motion to dismiss (ECF No. 12) is granted.

## DISCUSSION

The Wares' factual allegations, which must be taken as true at this stage of the proceedings and which MetLife does not seriously dispute, establish that: (1) the Wares made an "actual cash value" claim only and did not repair or replace the damaged property; (2) MetLife paid the Wares $151,756.82, as the "actual cash value of their loss" less their deductible; (3) MetLife calculated the actual cash value by estimating the actual cost to repair the damaged property in the amount of $192,876.90 and deducting from it depreciation and the Wares' deductible; (4) the Wares do not dispute that MetLife's estimate of $192,876.90 for repairing the

---

1. The Wares sued the following related Defendants: Metropolitan Property and Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company, Metropolitan Casualty Insurance Company, Metropolitan Direct Property and Casualty Insurance Company, and Metropolitan General Insurance Company (collectively, "MetLife"). All Defendants seek dismissal of the Wares' action on the same grounds.

damaged property was reasonable and consistent with the policy; (5) MetLife determined that a reasonable depreciation allowance for the estimated cost of repair was $40,119.08, which included depreciation of both the material and labor components of the estimated cost of repair; (6) the Wares do not allege that the "depreciation rate" used by MetLife was unreasonable or inconsistent with the policy; and (7) the Wares had a deductible of $1,000.00.

The resolution of MetLife's motion to dismiss depends on the interpretation of "actual cash value" in the Wares' MetLife homeowners insurance policy.[2] To make that determination, the Court applies Alabama substantive law. Any interpretation of a written contract must begin with the text. If the terms of an insurance policy are unambiguous, then the Court "must enforce the insurance policy as written." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005). "Whether a provision of an insurance policy is ambiguous is a question of law." *Id.* "A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract." *Travelers Cas. & Sur. Co. v. Ala. Gas Corp.*, 117 So.3d 695, 699 (Ala. 2012) (quoting *B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 880 (Ala. Civ. App. 2001)). And, "the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Herrera*, 912 So.2d at 1143. "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a

person of ordinary intelligence would reasonably give it." *Id.* "A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is 'reasonably susceptible to two or more constructions.' " *Id.* at 1144 (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 309 (Ala. 1999)). In deciding whether a term is ambiguous, the Court "must determine 'what a reasonably prudent person applying for insurance would have understood [the term] to mean.' " *Id.* (alteration in original) (quoting *Slade*, 747 So.2d at 308).

Here, the policy defines "actual cash value" as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." Homeowners Ins. Policy A–1, ECF No. 1–1 at 23. Although the Wares submitted an "actual cash value" claim only, the policy language regarding a full "repair or replacement" claim is also relevant to the Court's interpretation of the MetLife policy. That language provides that a policyholder who actually repairs or replaces the damaged property may make an additional claim for the replacement cost: "the full cost of repair or replacement ... without deduction for depreciation," within certain limits. *Id.* at G–1, ECF No. 1–1 at 40.

To determine "actual cash value," the MetLife policy requires an initial determination of "the amount which it would cost to repair or replace the [fire damaged house] with material of like kind and quality." This language is clear and unambiguous, and the Wares have not alleged that the adjuster's estimate of $192,876.90 for the cost of repair, which obviously includes

---

**2.** In ruling on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference," such as the insurance policy at issue in this case. *Tellabs,* *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

material and labor costs, was unreasonable or inconsistent with the policy. The policy provides that the "actual cash value," which is what the Wares were entitled to, is this cost of repair "less allowance for physical deterioration and depreciation including obsolescence." When the entire definition is read together, it is clear that an allowance for depreciation is to be deducted from the entire estimated cost of repairing the covered property. It logically follows that the depreciation allowance includes depreciation of the full estimated cost of repair, which obviously includes materials and labor. Nothing in the policy suggests that only the materials component of that cost of repair should be depreciated or that the repair labor cost should be ignored when determining depreciation. The policy clearly contemplates that the depreciation relates to the depreciation of the total estimated cost to repair or replace the property.[3]

Importantly, the insured may make an additional claim to recover that full depreciation if the insured actually makes the repairs or replaces the property. And the policy language allowing for the recovery of this depreciation likewise makes no distinction between labor and material repair costs. The absence of this distinction for such claims supports the Court's interpretation of depreciation in the "actual cash value" context.

The Wares attempt to lure the Court away from the clear and unambiguous text of the MetLife policy. They argue that the State of Alabama should, as a matter of public policy, prohibit depreciation of labor in calculating actual cash value. And the Wares have directed the Court to authority from other states that have taken this approach. But they pointed to no authority suggesting that the State of Alabama has done so or will likely do so. Until Alabama finds these types of "actual cash value" provisions unenforceable, the Court must limit its analysis to the text of the policy. The Court's duty is to determine what that text says, not whether the language contravenes some public policy notion that the Court personally may find laudable. That text is clear and unambiguous. Depreciation may be deducted based on the entire cost of repair, including repair materials and labor.[4]

## CONCLUSION

Based on the Wares' allegations in their Complaint and an interpretation of the clear and unambiguous language of their MetLife policy, the Wares have failed to state a claim for MetLife's breach of that insurance policy. Accordingly, Defendants' motion to dismiss (ECF No. 12) is granted.

IT IS SO ORDERED, this 7th day of December, 2016.

---

3. Other courts share the Court's interpretation. *See, e.g., Graves v. Am. Family Mut. Ins. Co.,* No. 14-2417-EFM-JPO, 2015 WL 4478468, at *3 (D. Kan. July 22, 2015); *Redcorn v. State Farm Fire & Cas. Co.,* 55 P.3d 1017, 1021 (Okla. 2002). But some do not. *See, e.g., Adams v. Cameron Mut. Ins. Co.,* 2013 Ark. 475, 430 S.W.3d 675, 679 (Ark. 2013).

4. The Court does not decide today that MetLife reasonably calculated the specific *amount* of the allowance for depreciation. It simply holds that in determining the depreciation allowance, the policy authorizes depreciation of the entire estimated cost to repair or replace the covered property, which includes material and labor. Whether the depreciation rate used to make this calculation was reasonable and authorized under the policy is not before the Court. Based on the present record, there is no contention that MetLife breached the insurance contract if it was authorized to include labor repair costs in its calculation of the depreciation allowance.