**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARGARET GRAVES, individually and
on behalf of all others similarly situated,

     Plaintiff - Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

     Defendant - Appellee.

No. 15-3187
(D.C. No. 2:14-CV-02417-EFM-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **KELLY** and **O'BRIEN**, Circuit Judges.
_____

    This case started as a putative class action case against American Family

Mutual Insurance Company (American Family), claiming it uniformly and

improperly misapplied depreciation in calculating actual cash value claims.

However, it never matured. A summary judgment in favor of American Family on

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Margaret Graves' individual claims pretermitted the class action. The only issue presented here is the propriety of the summary judgment. We affirm.[1]

## I. Background

After a hailstorm damaged her home, Graves made a claim to American Family under her homeowner's insurance policy, which provides for recovery of the "actual cash value" at the time of a covered loss as well as the "replacement cost" of the damaged property once repairs are completed. Aplt. App., Vol. 1 at 95-96. The policy defines "actual cash value" as "[t]he amount which it would cost to repair or replace damaged property with property of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence." *Id.* at 95.

An insurance adjuster from American Family appraised the actual cash value of Graves' damages at $4,432.78 for the roof and $489.22 for the kitchen ceiling. She received a payment from American Family for $4,010.27, which included those amounts, a "labor minimum" of $88.27, *id.*, Vol. 2 at 144, and a reduction of $1,000.00 to cover her deductible. She was also informed of her right to recover replacement costs of up to $7,776.82 for the roof and $563.03 for the kitchen ceiling provided the repairs were completed within one year from the date of damage. After the roof repairs were completed, Graves received an additional payment of $3,344.04 (the full replacement cost of the roof reduced by the actual-cash-value payment she already received for it, a total of $7,776.82). She did not complete the kitchen ceiling repairs within the one-year deadline and American Family denied her request

---

[1] Our jurisdiction derives from 28 U.S.C. § 1291.

to extend it. To summarize, all of Graves' timely filed claims were fully paid. But, she says, payment should have come sooner, in particular depreciation ought not to have reduced the first, "actual cash value," payment. Accepting her argument would in effect reduce, if not eliminate, the distinction between an "actual cash value" policy and the more expensive "replacement cost" policy.

Graves initiated this action in Kansas state court, but it was removed to the federal district court (diversity of citizenship). According to her, American Family breached the terms of her insurance policy and violated Kansas law by depreciating labor costs in determining the actual cash value of her damages and, with respect to the roof, by deferring payment for depreciation until after the repairs were completed.

As the district judge observed, no Kansas court had reached the specific issue of "whether an insurer may depreciate the cost of labor when calculating the actual cash value for a covered partial loss, where the policy's definition of 'actual cash value' specifically provides for depreciation." *Id.*, Vol. 2 at 274. Nonetheless, he concluded "a reasonable person in Graves's position would expect American Family to depreciate all costs necessary to (re)creating the insured 'property'—including the costs associated with labor—when calculating actual cash value." *Id.* at 275. Graves filed this appeal, presenting a single issue for review:

> Whether the district court erred by granting summary judgment for defendant American Family Mutual Insurance Company on the grounds that the depreciation of labor costs in determining the "actual cash value" of a covered property loss is lawful as allowed by the terms of American Family's insurance policy and Kansas law.

3

Aplt. Opening Br. at 2.  Along with her opening brief, she filed a motion to certify two questions of law related to this issue to the Kansas Supreme Court.  Since we can resolve the matter based on the plain language of Graves' policy, we see no reason to bother the Supreme Court.

## II.  Analysis

"In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007) (internal quotation marks omitted).  We review de novo the grant of summary judgment, applying the same standards as the district court.  *Id.*  Graves asserts no genuine dispute of material fact making summary judgment improper.  We are left with only legal questions.  And there is no dispute as to controlling substantive law — Kansas law controls the outcome of her underlying claim.  *See generally Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007).  Where, as here, no controlling state decision exists, our task is to predict how the state Supreme Court would resolve the legal issues presented.  *Id.* at 666.  "In doing so, [we] may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (citations and internal quotation marks omitted).

4

Under Kansas law, an insurance policy constitutes a contract, the interpretation of which is a question of law and, therefore, subject to de novo review. *AMCO Ins. Co. v. Beck*, 929 P.2d 162, 165 (Kan. 1996). "If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003). We ascertain the intent of the parties by considering the policy as a whole rather than by viewing provisions in isolation. *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1082 (10th Cir. 2009). "Ultimately, our task is to determine what a reasonably prudent insured would understand the language to mean." *Id.* (internal quotation marks omitted). "Courts should not strain to find an ambiguity when common sense shows there is none." *Marshall*, 73 P.3d at 130.

Replacement cost insurance provides greater coverage than an actual cash value policy and "is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property." *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438-39 (Fla. 2013) (internal quotation marks omitted). Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash value. *Burchett v. Kan. Mut. Ins. Co.*, 48 P.3d 1290, 1291 (Kan. Ct. App. 2002). The reason for this requirement "is to prevent an insured from directly profiting through the receipt of cash funds beyond

5

the actual cash value of the loss." *Hess v. N. Pac. Ins. Co.*, 859 P.2d 586, 589 (Wash. 1993) (en banc) (internal quotation marks omitted).

As Graves concedes, it was not inconsistent with the language of her policy or state law for American Family to allow for some depreciation when it determined the actual cash value of her loss. But she continues, saying depreciation must be separated into two components—materials and labor costs—and, she says, only the former is subject to depreciation. That, as we explain, is "A Bridge Too Far."[2]

In *Redcorn v. State Farm Fire & Casualty Co.*, 55 P.3d 1017, 1019 (Okla. 2002), the Oklahoma Supreme Court rejected a nearly identical argument. There, after Redcorn's roof was damaged in a storm, he made a claim under his policy, which provided for roof surface repair and replacement coverage on an actual-cash-value basis. *Id.* at 1018-19. The policy did not define "actual cash value," which the insurer calculated "by determining the replacement cost, including materials and labor, and depreciating it." *Id.* at 1019. Similar to Graves' argument, Redcorn argued "Oklahoma law permits actual cash value to be measured by replacement cost less depreciation, but he advocate[d] separating the cost of the roof replacement into components of materials and labor, and depreciating only the materials." *Id.*

The *Redcorn* court began by acknowledging insurance law to be based on the principle of indemnity—putting the insured in the same position as before the damage occurred. *Id.* at 1020. To indemnify Redcorn, it was necessary to consider the age and condition of the roof in determining the amount of his loss. *Id.* at 1021.

---

[2] Cornelius Ryan (1974).

6

Further, because a roof is the product of both materials and labor, labor costs are included in the depreciation of the roof. *Id.* at 1018, 1020. ("Depreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss."). In other words, Redcorn "insured a roof surface, not two components, material and labor." *Id.* at 1021. The court declined to construe the policy in the manner Redcorn suggested because he would be unjustly enriched if allowed to recover the replacement cost for the labor component of his loss even though he had purchased an "actual cash value" policy. *Id.*

By similar reasoning, if American Family could depreciate only the cost of materials in determining the actual cash value of Graves' loss, she would receive a windfall based on labor costs she never incurred with respect to her kitchen ceiling. Such a result is contrary to the principle of indemnity because she would be in a better position than she was before the damage occurred. Had she wanted to recover the full replacement cost under her policy she should have had the repairs completed by the one-year deadline.

Graves' reliance on *Thomas v. American Family Mutual Insurance Co.*, 666 P.2d 676 (Kan. 1983), and *Adams v. Cameron Mutual Insurance Co.*, 430 S.W.3d 675 (Ark. 2013), is unavailing because neither case involved a policy which defined "actual cash value." In *Thomas*, the court concluded the actual cash value could not be reduced by depreciation because neither the policy nor state law

7

provided for such a reduction. 666 P.2d at 677-78. In *Adams*, the court found the term "actual cash value" to be ambiguous and therefore construed the policy strictly against the insurer. 430 S.W.3d at 678-79. In contrast, Graves' policy defines "actual cash value" to include an allowance for depreciation. *Cf. Thomas*, 666 P.2d at 679 (holding depreciation could not be considered "absent policy provisions to the contrary").

Faced with a lack of direct support in the case law, Graves argues in favor of following the dissent in *Redcorn*, which states, "The very idea of depreciating the value of labor is illogical." 55 P.3d at 1022 (Boudreau, J., dissenting). However, in this context we see no reason to dissect depreciation into separate components of materials and labor costs in the first instance. "Depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." *Black's Law Dictionary* (10th ed. 2014). A "depreciation method" is "[a] set formula used in estimating an asset's use, wear, or obsolescence." *Id. Black's Law Dictionary* describes ten different depreciation methods, none of which involves distinguishing materials from labor costs. Rather, its descriptions focus on the asset itself and various approaches to determining its value as a whole. Based on the plain and ordinary meaning of "depreciation," a reasonably prudent insured would not expect the insurer to apply such an unorthodox depreciation method when determining actual cash value.

Finally, Graves argues the language of the policy, particularly the phrase "less allowance for physical deterioration and depreciation, including obsolescence," is

ambiguous and therefore must be construed in her favor. Stripped to the bone, she invites us to beget an ambiguity, rather than resolve one. We decline the invitation. Based on the definitions above and the policy language (which references neither materials nor labor costs), a reasonably prudent insured would understand "depreciation" to mean a decline in an asset's overall value. *See Marshall*, 73 P.3d at 130 ("Courts should not strain to find an ambiguity when common sense shows there is none.").

Because American Family did not impermissibly depreciate labor costs in determining the actual cash value of Graves' loss, no additional amount was due under the policy, and her claim based on the time value of the deferred payment for the replacement cost of her roof necessarily fails as well.

## III. Conclusion

The summary judgment is affirmed.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

9