SLIP OPINION

Cite as 2015 Ark. 1

# SUPREME COURT OF ARKANSAS

No. CV–14–454

| | |
|---|---|
| CRAFTON, TULL, SPARKS & ASSOCIATES, INC. | **Opinion Delivered** January 15, 2015 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CIV-2009-2582-4] |
| V. | |
| RUSKIN HEIGHTS, LLC; METROPOLITAN NATIONAL BANK; WILLIAM B. BENTON, JR.; J. KEVIN ADAMS; EDWARD A. LABRY, III; JOHN G. BRITTINGHAM; CARLEN G. HOOKER; EDWARD F. DAVIS; DIRK W. VAN VEEN; AND DAVID RUFF, IN HIS OFFICIAL CAPACITY AS TAX COLLECTOR FOR WASHINGTON COUNTY, ARKANSAS | HONORABLE CRISTI BEAUMONT, JUDGE |
| APPELLEES | <u>AFFIRMED</u>. |

**JIM HANNAH, Chief Justice**

Appellant Crafton, Tull, Sparks & Associates, Inc. ("CTSA") appeals an order of the

Washington County Circuit Court granting summary judgment in favor of appellees Ruskin

Heights, LLC; Metropolitan National Bank ("Metropolitan"); William B. Benton, Jr.; J.

Kevin Adams; Edward A. Labry, III; John G. Brittingham; Carlen G. Hooker; Edward F.

Davis; Dirk W. Van Veen; and David Ruff, in his official capacity as Tax Collector for

Washington County. For reversal, CTSA argues that the circuit court improperly refused to

grant its lien priority over Metropolitan's mortgage lien that was recorded after construction

commenced. CTSA also asserted that its lien should relate back to the commencement of construction. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1-2(a)(7) (2014), as we have dismissed two previous appeals. *See Crafton, Tull, Sparks & Assocs. v. Ruskin Heights, LLC*, 2013 Ark. 85 ("*Crafton II*") (dismissing without prejudice for lack of a final order); *Crafton, Tull, Sparks & Assocs. v. Ruskin Heights, LLC*, 2012 Ark. 56 ("*Crafton I*") (dismissing without prejudice for lack of a final order). We affirm.

An extensive recitation of the facts and procedure was set forth in *Crafton I*, 2012 Ark. 56, and we provide the relevant facts concerning this appeal. On September 17, 2007, Metropolitan and Ruskin Heights executed a promissory note and loan agreement for $8,606,250 to finance construction of a residential subdivision on real property located in Washington County. As security for the note, Ruskin Heights executed a mortgage on the real property in favor of Metropolitan. In addition, William B. Benton, Jr.; J. Kevin Adams; Edward A. Labry, III; John G. Brittingham; Carlen G. Hooker; Edward F. Davis; and Dirk W. Van Veen executed personal guarantees.

Nabholz Construction Company began construction on the project on the morning of October 1, 2007, and Metropolitan filed its mortgage that afternoon. CTSA subsequently began working on the project for Ruskin Heights. On September 25, 2009, Jim Tull, CTSA's chief financial officer, filed an "Architect's and Engineer's Account and Affidavit of Account" stating that Ruskin Heights owed CTSA $37,239.45. Ruskin Heights received notice of CTSA's lien filing on September 28, 2009. The $37,239.45 balance remained unpaid. Meanwhile, on August 3, 2009, Metropolitan filed a foreclosure complaint alleging

breach of note and breach of guaranties against Ruskin Heights; William B. Benton, Jr.; J. Kevin Adams; Edward A. Labry, III; John G. Brittingham; Carlen G. Hooker; Edward F. Davis; Dirk W. Van Veen; and David Ruff in his official capacity as Tax Collector for Washington County.

On November 2, 2009, CTSA filed a complaint asserting an engineer's lien against Ruskin Heights. Thereafter, on December 7, 2009, the circuit court granted CTSA's motion for consolidation and joinder of the two complaints. On December 14, 2009, CTSA filed an amended complaint against Ruskin Heights and Metropolitan. CTSA requested (1) that its lien and that Nabholz's lien be declared superior to any lien or claims by Metropolitan and Ruskin Heights and (2) that CTSA be awarded a monetary judgment against Ruskin Heights and others. On September 10, 2010, CTSA filed a motion for summary judgment as to its claims against Ruskin Heights and Metropolitan, which it amended on September 24, 2010. In addition, Metropolitan filed a cross-motion for summary judgment against CTSA on September 10, 2010. After two hearings on the matter, the court held a final hearing on October 26, 2010, in which it ruled from the bench that CTSA had an engineering and architectural lien against the property at issue; that CTSA's lien did not have priority over Metropolitan's mortgage lien; and that CTSA's lien did not relate back to the date of construction.

On November 29, 2010, the circuit court entered a partial judgment and decree, finding that Ruskin Heights had defaulted and owed Metropolitan damages; that Metropolitan's mortgage lien was valid and enforceable; that Metropolitan had first priority

as to any lien claim by Nabholz or CTSA; and that CTSA had a second lien on the property. CTSA filed a notice of appeal from the order on December 10, 2010. Thereafter, on December 13, 2010, the circuit court entered an order granting Metropolitan's motion for summary judgment against CTSA and denying CTSA's motion for summary judgment against Metropolitan. In its order, the circuit court ruled that the "Architect's and Engineer's Liens are not given the same priority under [Arkansas Code Annotated section] 18-44-105 as Materialmen's [sic] and Laborer's Liens," and further found that "CTSA's Architect's and Engineer's Lien did not attach to the property until August 25, 2009, which [was] the date CTSA's lien was filed of record."[1]

CTSA appealed from the November 29, 2010 order finding that CTSA's lien was second in priority to Metropolitan's lien. In *Crafton I*, 2012 Ark. 56, we dismissed the appeal without prejudice for lack of a final order and identified the outstanding issues. On remand, the circuit court entered an order stating that certain parties and actions remained unresolved. CTSA appealed the November 29, 2010 order finding that CTSA's lien was second in priority to the bank's lien. We again dismissed without prejudice for lack of a final order on the basis that the order still contained unresolved issues and that the record lacked certain relevant pleadings. *See Crafton II*, 2013 Ark. 85.

On remand, on February 27, 2014, the circuit court entered an order dismissing

---

[1]We note that the circuit court's December 13, 2010 order contained a scrivener's error. In its order, the court stated that CTSA's engineer's lien was filed on August 25, 2009, but the record reveals that CTSA's lien was recorded on September 25, 2009. We adhere to the September 25, 2009 date.

Nabholz's complaint in intervention and all remaining claims and cross-claims with prejudice. That same day, the court also entered a final judgment finding that the parties had not litigated or pursued any claims since May 2012 and that such claims were deemed to be dismissed for failure to prosecute. CTSA timely filed its notice of appeal, and we now consider the parties' arguments before us.

For the first point on appeal, CTSA argues that the circuit court erred in granting summary judgment on the issue of lien priority. Specifically, CTSA contends that the court failed to grant its engineer's lien priority over a mortgage filed after construction had commenced. CTSA asserts that the circuit court incorrectly interpreted the engineer's lien statute, Arkansas Code Annotated section 18-44-105 (Supp. 2013), in connection with Arkansas Code Annotated section 18-44-110 (Repl. 2003). CTSA further maintains that its September 25, 2009 lien should have related back to the morning of October 1, 2007, when construction commenced, thereby giving it priority over Metropolitan's mortgage lien, which was filed in the afternoon of October 1, 2007. For the second point on appeal, CTSA argues that section 18-44-110 removes any distinction between its engineer's lien and the materialman's lien and reiterates that CTSA's lien should relate back to the commencement of construction and should have priority over Metropolitan's mortgage. Because these are related points, we discuss them together.

Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Ark. State Bd. of Election Comm'rs v. Pulaski Cnty.*

*Election Comm'n*, 2014 Ark. 236, 437 S.W.3d 80. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *See id.* When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *See id.* As to issues of law presented, our review is de novo. *See id.*

CTSA and Metropolitan present the issue of lien priority as an application of both the materialman's and engineer's lien statutes. As background, engineer's liens were created by the legislature in 1971, enacted by Act 291 of 1971, and are codified at Arkansas Code Annotated section 18-44-105 (Repl. 2003). The distinction between engineer's liens and materialman's liens was first noted by this court in *Mahaffey & Assocs. v. Brophy*, 249 Ark. 884, 462 S.W.2d 226 (1971), in which this court declined to extend the materialman's lien statute to an engineer who performed engineering and surveying services. This court distinguished the type of services that engineers provide in connection with real estate. *See id.*

The sole issue on appeal involves our statutory interpretation of sections 18-44-105 and 18-44-110. This court reviews the circuit court's statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *Roberson v. Phillips Cnty. Election Comm'n*, 2014 Ark. 480, ___ S.W.3d ___. The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id.* We construe statutes so that, if possible, every word is given meaning and effect. *See id.* If the language of a statute is clear and unambiguous and

conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *See id.* When a statute is clear, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *See id.* Statutes relating to the same subject should be read in a harmonious manner if possible. *See id.*

Section 18-44-105, the engineer's lien statute, provides as follows:

> (a) Every architect, engineer, surveyor, appraiser, landscaper, abstractor, or title insurance agent who shall do or perform any architectural, engineering, surveying, appraisal, landscaping, or abstracting services upon any land, or who shall issue a title insurance policy or provide landscaping supplies upon any land, building, erection, or improvement upon land, under or by virtue of any written agreement for the performance of the work with the owner thereof, or his or her agent, shall have a lien upon the land, building, erection, or improvement upon land to the extent of the agreed contract price or a reasonable price for those services.
>
> (b)(1) However, the lien does not attach to the land, building, erection, or improvement upon land *unless and until the lien is duly filed of record* with the circuit clerk and recorder in the county in which the land, building, erection, or improvement is located.
>
> (2) The lien shall be:
>
> (A) Subject to the notice requirements of §§ 18-44-114 and 18-44-115;
>
> (B) Filed under § 18-44-117; and
>
> (C) Enforced under this subchapter.

(Emphasis added.) Lien statutes are in derogation of the common law and must be strictly construed. *BB & B Constr. Co., Inc. v. F.D.I.C.*, 316 Ark. 663, 875 S.W.2d 48 (1994); *Lambert v. Newman*, 245 Ark. 125, 431 S.W.2d 480 (1968); *Dix v. Olds*, 242 Ark. 850, 415 S.W.2d 567 (1967).

Cite as 2015 Ark. 1

Based on our de novo standard of review, we strictly construe section 18-44-105 and interpret the plain meaning of the statute, which dictates that engineers shall have a lien, but that lien "does not attach to the land, building, erection, or improvement upon [the] land *unless and until the lien is duly filed of record*." (Emphasis added.)  Here, CTSA filed its lien on September 25, 2009, and Ruskin Heights received notice of CTSA's filing on September 28, 2009.  Thus, we hold that CTSA's engineer's lien attached on September 25, 2009, when it was duly filed of record.

CTSA asserts that, pursuant to section 18-44-105, its engineer's lien can relate back to the date that the construction commenced under a relate-back provision contained in section 18-44-110.  Section 18-44-110 provides in its entirety as follows:

(a)(1) *The liens for labor performed or material or fixtures furnished*, as provided for in this subchapter, shall have equal priority toward each other *without regard to the date of filing the account or lien* or the date when the particular labor or material was performed or furnished. *All such liens shall date from the time that the construction or repair first commenced.*

(2) Construction or repair commences when there is a visible manifestation of activity on real estate that would lead a reasonable person to believe that construction or repair of an improvement to the real estate has begun or will soon begin, including, but not limited to, the following:

(A) Delivery of a significant amount of lumber, bricks, pipe, tile, or other building material to the site;

(B) Grading or excavating the site;

(C) Laying out lines or grade stakes; or

(D) Demolition in an existing structure.

(3) In all cases in which a sale shall be ordered and the property sold, and the proceeds arising from the sale are not sufficient to discharge in full all the liens against the property without reference to the date of filing the account or lien, the proceeds shall be paid pro rata on the respective liens.

(b)(1)(A) The liens for labor performed or materials or fixtures furnished, *as provided for in this subchapter*, shall attach to the improvement on which the labor was performed or the materials or fixtures were furnished in preference to any encumbrance existing on the real estate prior to the commencement of

SLIP OPINION

construction or repair of the improvement.

(B) In all cases in which the prior encumbrance was given for the purpose of funding construction or repair of the improvement, that lien shall have priority over all liens given by this subchapter.

(2) The liens, as provided for in this subchapter, shall be enforced by foreclosure, as further provided for in this subchapter, and the property ordered sold subject to the lien of the prior encumbrance on the real estate.

(c) The lien for labor performed and materials or fixtures furnished, as provided for in this subchapter, shall have priority over all other encumbrances that attach to the real estate or improvements thereon subsequent to commencement of construction or repair.

(Emphasis added.)

Here, contrary to CTSA's assertions, we do not read section 18–44–110 to expand the priority-lien privilege to include engineer's liens. Section 18–44–110(a)(1) contains the sentence, "All such liens shall date from the time that the construction or repair first commenced," but that sentence does not apply to all liens contained in the code's subchapter entitled, "Mechanics' and Materialmen's liens" as CTSA suggests. Rather, "all such liens" in section 18–44–110(a)(1) specifically modifies "[t]he liens for labor performed or material or fixtures furnished" contained in the first sentence of section 18–44–110(a)(1). In other words, the "[a]ll such liens" language in section 18–44–110(a)(1) refers to materialmen's, laborer's, and mechanics' liens contained in the subchapter—not an engineer's lien, which the legislature set forth separately in section 18–44–105. Further, section 18–44–110(a)(1) expressly gives equal priority to materialmen's, laborer's, and mechanics' liens "without regard to the date of filing," while section 18–44–105(b)(1) specifically states that engineer's liens attach upon filing. Thus, given a strict construction of section 18–44–110, we conclude that any relate-back provisions in section 18–44–110 do not apply to engineer's liens and that

section 18-44-110 does not allow for an engineer's lien to relate back to the date of construction. Based on our de novo interpretation of sections 18-44-105 and 18-44-110, we hold that the circuit court properly granted summary judgment as a matter of law by finding that Metropolitan's lien, filed on October 1, 2007, had priority over CTSA's engineer's lien, filed on September 25, 2009.

We decline to reach CTSA's second argument regarding legislative intent. We have stated repeatedly that if a statute is clear, we will not search for the legislative intent; rather, the intent must be gathered from the plain meaning of the language used. *Ark. Dep't of Econ. Dev. v. William J. Clinton Presidential Found.*, 364 Ark. 40, 53, 216 S.W.3d 119, 128 (2005); *Weiss v. Geisbauer*, 363 Ark. 508, 215 S.W.3d 628 (2005); *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). While we recognize that the parties argued this issue in their briefs, we have already determined the plain meaning of sections 18-44-105 and 18-44-110, and we do not reach CTSA's second argument. Because we hold that section 18-44-110 is inapplicable to the case at bar, we do not address CTSA's argument regarding its labor as satisfying the "visible manifestation of activity" requirement of section 18-44-110.

Affirmed.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *David R. Matthews* and *Sarah L. Waddoups*, for appellant.

*McMullan Law Firm*, by: *Marian Major McMullan*, for appellees.