Cite as 2015 Ark. 460

# SUPREME COURT OF ARKANSAS

No. CV-15-111

| | |
|---|---|
| SHELTER MUTUAL INSURANCE COMPANY | **Opinion Delivered** December 10, 2015 |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CV-14-193-2] |
| V. | |
| MICHAEL GOODNER AND ROBBIE GOODNER | HONORABLE BRENT HALTOM, JUDGE |
| APPELLEES | <u>AFFIRMED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Shelter Mutual Insurance Company (Shelter) appeals from an order of the Miller County Circuit Court granting summary judgment in favor of Appellees Michael Goodner and Robbie Goodner and specifically finding that depreciation of labor in the calculation of actual cash value is against Arkansas public policy. On appeal, Shelter argues that the insurance policy at issue unambiguously provided for depreciation of labor and that the practice of depreciating labor does not violate any principle of indemnity or Arkansas law. We affirm the circuit court's ruling.

The facts are not disputed. The Goodners' property in Texarkana, Arkansas, was insured under a Mobile Homeowners Insurance Policy (the policy) issued by Shelter. The policy provided that, in the event of a covered loss, Shelter would pay the Goodners "the *actual cash value* of all the damaged parts of the covered property" or the limit of liability,

whichever was less. (Emphasis in original.) The policy defined "actual cash value" to mean "*total restoration cost* less *depreciation*." (Emphasis in original.) The policy defined "depreciation" as follows:

> *Depreciation* means the amount by which any part of the covered property which must be *replaced* has decreased in value since it was new. The condition, age, extent of use, and obsolescence of the property will be considered in determining *depreciation*. When calculating *depreciation*, we will include the *depreciation* of the materials, the labor, and the tax attributable to each part which must be *replaced* to allow for *replacement* of the damaged part, whether or not that part is damaged.

(Emphasis in original.)

On or about July 9, 2012, the Goodners' property incurred a loss covered by the policy. Shelter estimated the total restoration cost to be $10,319.23. With a deduction in the amount of $3,397.24 for depreciation, the estimated actual cash value came to $6,921.99. Shelter made a payment of $5,921.99 to the Goodners—the estimated actual cash value, less their $1,000 deductible. It is undisputed that the deduction for depreciation included depreciation of both materials and labor.

On August 12, 2014, the Goodners filed a petition for declaratory judgment, seeking a declaration that Shelter violated Arkansas law and public policy by depreciating labor costs in calculating the actual cash value of the covered loss. They later filed a motion for summary judgment, arguing in pertinent part that Arkansas law prohibits the depreciation of labor, as reflected in this court's decision in *Adams v. Cameron Mutual Insurance Co.*, 2013 Ark. 475, 430 S.W.3d 675. Following briefing and a hearing, the circuit court entered an order on November 21, 2014, granting the Goodners' motion for summary judgment. The circuit

court specifically found that, pursuant to *Adams*, depreciation of labor in the calculation of actual cash value under any policy that pays actual cash value is against the public policy of the State of Arkansas. Shelter filed a timely notice of appeal on December 4, 2014.

Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *See, e.g., Crafton, Tull, Sparks & Assocs., Inc. v. Ruskin Heights, LLC*, 2015 Ark. 1, 453 S.W.3d 667. However, when the parties agree on the facts, as they do here, we simply determine whether the appellee was entitled to judgment as a matter of law. *See id*. As to issues of law presented, our review is de novo. *See id*.

We begin our analysis with our decision in *Adams*, 2013 Ark. 475, 430 S.W.3d 675. There, we were called upon to answer a question of law certified by the United States District Court for the Western District of Arkansas in accordance with Arkansas Supreme Court Rule 6-8. The certified question was the following:

> Whether an insurer in determining the "actual cash value" of a covered loss under an indemnity insurance policy may depreciate the costs of labor when the term "actual cash value" is not defined in the policy.

*Id*. at 1, 430 S.W.3d at 676. We answered this question in the negative, holding that the costs of labor may not be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term "actual cash value." *Id*. at 7, 430 S.W.3d at 679.

In so holding, we were persuaded by one of the dissents from the majority holding of the Supreme Court of Oklahoma in *Redcorn v. State Farm Fire & Casualty Co.*, 55 P.3d 1017

(Okla. 2002), and particularly its "discussion on the concept of depreciating labor." *Adams*, 2013 Ark. 475, at 6, 430 S.W.3d at 678.

> The shingles are of course logically depreciable. As they age, they certainly lose value due to wear and tear. . . .
>
> Labor, on the other hand, is not logically depreciable. Does labor lose value due to wear and tear? Does labor lose value over time? What is the typical depreciable life of labor? Is there a statistical table that delineates how labor loses value over time? I think the logical answers are no, no, it is not depreciable, and no. The very idea of depreciating the value of labor is illogical. . . .
>
> It is important to keep in mind that "[i]ndemnity is the basis and foundation of all insurance law." *Rochester American Ins. Co.* [*v. Short*, 252 P.2d 490,] 493 (1953). The objective of indemnity is to put the insured in as good a condition, as far as practicable, as he would have been in if the loss had not occurred, that is, to reimburse the insured for the loss sustained, no more, no less. *Id.* To properly indemnify Redcorn, State Farm should pay him the actual cash value of the shingles, depreciated for wear and tear, plus the cost of their installation. . . . *[A]llowing [the insurer] to depreciate the cost of labor would leave [the insured] with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity.*

*Id.* at 6, 430 S.W.3d at 678–79 (alteration in original) (emphasis in original) (quoting *Redcorn*, 55 P.3d at 1022–23 (Boudreau, J., dissenting)). In *Adams*, this court endorsed Justice Boudreau's reasoning and held that we "simply cannot say that labor falls within that which can be depreciable." *Id.* at 6, 430 S.W.3d at 679.

Nonetheless, Shelter argues that *Adams* is not controlling here. Shelter points out that, unlike the indemnity insurance policy at issue in *Adams*, the Goodners' policy explicitly defined "actual cash value" and defined it to include depreciation of labor. Shelter further posits that the only basis for our holding in *Adams* was the ambiguity created by the policy's failure to define "actual cash value," an ambiguity that had to be resolved in favor of the

SLIP OPINION

insured. While we did find that an ambiguity existed in the *Adams* policy, we then set out to resolve that ambiguity, asking "whether the costs of labor may be depreciated when determining the actual cash value under an indemnity insurance policy"; we concluded that they may not. *Id*. at 5, 430 S.W.3d at 678. Specifically, we concluded that the concept of depreciating labor is "illogical" and "inconsistent with the principle of indemnity." *Id*. at 6, 430 S.W.3d at 678–79 (quoting *Redcorn*, 55 P.3d at 1022–23 (Boudreau, J., dissenting)). Our holding applies with equal weight here.

We are not persuaded by Shelter's suggestion that the policy language controls. It is settled Arkansas law that an insurer may contract with its insured upon whatever terms the parties may agree, so long as those terms are not contrary to statute or public policy. *See, e.g.*, *Pardon v. S. Farm Bureau Cas. Ins. Co.*, 315 Ark. 537, 868 S.W.2d 468 (1994) (citing *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978)). The term in the Goodners' policy providing for depreciation of labor violates established principles of indemnity, as explained in *Adams*. *See also Ark. Blue Cross & Blue Shield v. Long*, 303 Ark. 116, 792 S.W.2d 602 (1990) (citing 10 G. Couch, *Couch on Insurance 2d* § 41:378 (rev. ed. 1982)) (stating that the right of an insurer to incorporate in its contracts such provisions as it may desire is subject to the limitation that conditions in the nature of exceptions or limitations should not be unreasonable). Whether the term is ambiguous or unambiguous is a question we need not answer; in either case, the provision is contrary to Arkansas law.[1]

---

[1]We note that, in support of its contention that the policy unambiguously provided for depreciation of labor, Shelter relies on the affidavit of its senior legal counsel, James William

In addition, the policy itself, in defining "actual cash value," stated as follows: "If the law of the state in which this policy is issued limits the factors which may be considered in determining the *actual cash value*, only the factors allowed by such law will be considered." (Emphasis in original.) Pursuant to *Adams*, the law of this state precludes depreciation of labor in calculating actual cash value. Accordingly, that factor shall not be considered.

Consistent with *Adams*, we hold that labor may not be depreciated in calculating the actual cash value of a covered loss under an indemnity insurance policy. To do so would violate Arkansas law. While the circuit court's ruling was based solely on public-policy grounds, it is axiomatic that this court can affirm a circuit court if the right result is reached, even if it is for a different reason. *See, e.g.*, *Wade v. Ferguson*, 2009 Ark. 618.

Affirmed.

Special Justices RONALD A. WILLIAMS, R. BRYAN TILLEY, and KEVIN R. HOLMES join in this opinion.

BRILL, C.J., and WOOD, J., dissent.

GOODSON, HART, and WYNNE, JJ., not participating.

---

Turley, which was attached as an exhibit to its response to the Goodners' motion for summary judgment. In the affidavit, Turley explained that Shelter's practice is to tie depreciation of labor to depreciation of materials: "[T]he same amount of depreciation (expressed as a percentage of its full repair or replacement cost) is applied to both the labor and materials required to repair or replace that damaged component." In other words, there is no separate formula for labor depreciation. In our view, this further supports the conclusion that labor is not logically depreciable.

**RHONDA K. WOOD, Justice, dissenting.** I dissent for two reasons. First, although the majority opinion is vague at best on this issue, *Adams* does not control this case. *See Adams v. Cameron Mutual Insurance Co.*, 2013 Ark. 475, 430 S.W.3d 657. Second, an indemnity insurance policy that defines actual cash value to include the depreciation of labor does not violate Arkansas public policy. This is not an area of paramount public concern where the court should offend traditions of separation of powers and create public policy. The majority rewards the Goodners by giving them the benefits of an insurance policy they declined to purchase.

In *Adams*, we answered the following question of law from the federal court: whether an insurer in determining the "actual cash value" of a covered loss under an indemnity insurance policy may depreciate the costs of labor ***when the term "actual cash value" is not defined***. *Id.* (emphasis added). The majority contends that the holding in *Adams* "applies with equal weight here." In other words, the majority claims the court in *Adams* answered a question broader than the certified question presented. I believe it did not. *Adams* stands for the limited proposition that where an indemnity policy does not define actual cash value, and both the insurer and the insured offer differing reasonable interpretations of that term, the interpretation most favorable to the insured applies. Because the Goodners' policy contained an express provision defining actual cash value and depreciation, this case is distinguishable, and *Adams* is not controlling.

The majority also extends *Adams* to hold that a policy that provides for the depreciation of labor violates established principles of indemnity. However, their conclusion

is based on a comment in *Adams*, which, in turn, is based on a dissenting opinion from the Oklahoma Supreme Court. That comment was dictum, as that issue was not before the court. *See Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003); *Smith v. City of Little Rock*, 279 Ark. 4, 648 S.W.2d 454 (1983). This court is not bound by obiter dictum even if it is couched in terms that imply the court reached a conclusion on the matter. *Byme, Inc. v. Ivy*, 367 Ark. 451, 241 S.W.3d 229 (2006). Accordingly, the majority's reliance on *Adams* as precedent is erroneous.

Second, the actual cash value policy which provided for the depreciation of labor does not violate public policy. As this court has stated, "[a]n insurer may contract with its insured upon whatever terms the parties may agree which are not contrary to statute or public policy." *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 852–53, 568 S.W.2d 11, 13 (1978). The Goodners argue that Arkansas law and policy prohibit the depreciation of labor. This court has explained that a contract is against public policy only if it is "injurious to the interests of the public or contravenes some established interest of society or some public statute, or is against good morals, or tends to interfere with the public welfare." *Guar. Nat'l. Ins. Co. v. Denver Roller, Inc.*, 313 Ark. 128, 138, 854 S.W.2d 312, 317 (1993). We have stated that a matter of public policy lies almost exclusively in the legislative domain. *E.g., Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). The decision of the General Assembly in that regard will not be interfered with by the courts in the absence of "***palpable error***" in the exercise of the legislative judgment. *Id.*; *State Farm Mut. Auto. Ins. Co. v. Henderson,* 356 Ark. 335, 342, 150 S.W.3d 276, 280 (2004); *Jordan v. Atl. Cas. Ins. Co.*, 344 Ark. 81, 40

S.W.3d 254 (2001); *Norton v. Hinson*, 337 Ark. 487, 989 S.W.2d 535 (1999); *McDonald v. Pettus*, 337 Ark. 265, 998 S.W.2d 9 (1999)(emphasis added).

There was no palpable error here. The Arkansas legislature enacts public policy through its statutes, and there is no statute on the depreciation of labor. Nor can we say that this contract term interferes with the public welfare to the extent that we would take the unprecedented step of creating public policy in the absence of legislation.

Shelter and the Goodners were free to contract as to policy terms. *See Couch v. Farmers, Ins. Co.*, 375 Ark. 255, 289 S.W.3d 909 (2008). Today there is a vast marketplace of insurance providers and policies. Some providers and some policies provide greater restrictions and exclusions than others. Typically, policies with lower premiums have greater restrictions on coverage. The Goodners had the option to choose between an actual cash value and a replacement costs policy. They chose the cheaper actual cash value policy, which unambiguously stated that Shelter would deduct depreciation. This included depreciation for labor, which the policy also clearly defined. The premiums on the Goodners' policy were calculated based on the policy terms. Nevertheless, the Goodners claim they are entitled to an inflated actual cash value. They want to be reimbursed the actual value of the tangible items and the replacement costs of the labor. This was not the bargained for exchange. The Goodners should not get the benefit of the greater policy coverage without paying the greater premium. The Goodners' decision to elect for less coverage is not a palpable error that offends the public welfare, thus requiring this court to take the extraordinary step of voiding it on public policy grounds.

Accordingly, I dissent.

BRILL, C.J., joins.

*Munson, Rowlett, Moore and Boone, P.A.*, by: *Beverly A. Rowlett*, *John E. Moore*, and *Sarah E. Cullen*, for appellant.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*; and *Stephen Engstrom Law Office*, by: *Stephen Engstrom*, for appellees.